UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. Christian M. Heesch, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DIAGNOSTIC PHYSICIANS GROUP, P.C.; IMC - DIAGNOSTIC AND MEDICAL CLINIC, P.C.; IMC - NORTHSIDE CLINIC, P.C.; INFIRMARY MEDICAL CLINICS, P.C.; and INFIRMARY HEALTH SYSTEM, INC. | ) ) ) ) ) ) | Civil Action No. 11-364-KD-B |
| Defendants. | ) ) ) | |

**INFIRMARY DEFENDANTS' BRIEF
IN SUPPORT OF MOTION TO DISMISS
<u>UNITED STATES' COMPLAINT IN INTERVENTION</u>**

## Table of Contents

I.      INTRODUCTION ............................................................................................ 1

II.     THE DEFENDANT PARTIES ...................................................................... 2

III.    PLEADING STANDARDS ........................................................................... 3

IV.     ARGUMENT ................................................................................................ 5

        A.      The Government Failed to Sufficiently Plead All Counts as to IHS and
                IMC. .................................................................................................. 6

                1.      The Government Failed to Sufficiently Plead Counts I through III
                        Against IHS and IMC. ............................................................. 6

                2.      The Government Has Not Pleaded Counts IV and V with
                        Sufficient Particularity Against IHS or IMC. ......................... 8

                3.      The Government Has Not Pleaded Veil-Piercing to State a Claim
                        Against IHS or IMC. ................................................................ 9

        B.      The Government Failed to Sufficiently Plead Counts I, II, and III Against
                All Defendants with the Required Particularity. .............................. 12

                1.      The Government Failed to Plead Counts I and II with Sufficient
                        Particularity. ......................................................................... 12

                2.      The Government Failed to Plead Count III with Sufficient
                        Particularity. ......................................................................... 14

                        a.      The Government Failed to Meet Pre-FERA Pleading
                                Standards. .................................................................. 15

                        b.      The Government Failed to Meet Post-FERA Pleading
                                Standards. .................................................................. 16

        C.      The Government Failed to Sufficiently Plead Counts IV and V. ......... 17

                1.      The Government Must Specify Whether Counts IV and V are State
                        Common Law Claims or Federal Common Law Claims. ........... 17

                2.      Regardless of Whether Counts IV and V are State or Federal Law
                        Claims, These Counts Must Fail Because the Complaint Does Not
                        Sufficiently Plead An Underlying FCA Violation. .................... 18

                3.      Counts V Fails for the Additional Reason That It Does Not
                        Distinguish Among Defendants. ............................................... 19

V.      CONCLUSION ........................................................................................... 19

Defendants IMC - Diagnostic and Medical Clinic, P.C. ("DMC"), IMC - Northside Clinic, P.C. ("Northside"), Infirmary Medical Clinics, P.C. ("IMC"), and Infirmary Health System, Inc. ("IHS") (collectively, the "Infirmary Defendants"), submit the following brief in support of their Motion to Dismiss United States' Complaint in Intervention.[1]

## I.   <u>INTRODUCTION</u>

The Defendant Clinics DMC and Northside have had longstanding compensation arrangements with Diagnostic Physicians Group, P.C. ("DPG") under which the physician members of DPG provided the full scope of professional medical services at DMC and Northside on a full-time basis.  Under these arrangements, the compensation was set in advance and based on the collections the DMC and Northside Clinics received for the services performed by the DPG physicians.  Neither the compensation itself nor any annual compensation adjustments varied based on the volume or value of referrals.  The compensation was at fair market value and commercially reasonable.  These arrangements were commercially reasonable, compliant with the Stark Law and Anti-Kickback Statute, and did not violate the False Claims Act ("FCA").

But at this stage of the case, this Court must accept all allegations, however incorrect or unfounded, as true.  Even under this standard, the United States' Complaint fails to state any claim upon which relief can be granted.  In its allegations, the Government fails to actually identify the who, what, where, when, or how of the alleged false claims and their submissions. The United States also lumps together the defendants, assumes this Court will not scrutinize the separate corporate entities, and only generally describes its allegations against the group of

---

[1] The United States' Complaint in Intervention (Doc. 30) ("Complaint") is cited herein as "Cmplt." by paragraph number.  The Complaint uses slightly different terms than this Brief; the Complaint uses "Clinic" or "IMC-DMC" when referring to DMC, and uses "IMC-Northside" when referring to Northside.  Cmplt. ¶ 3.

defendants, without the legally required particularity with respect to each individual defendant. These general allegations do not satisfy well-established pleading requirements for particularity, especially in an FCA case, and the Complaint should be dismissed.

Similarly, the United States' common law claims in Counts IV and V should be dismissed on the additional basis that the Government fails to identify whether it is proceeding under state or federal common law. In this District Court, such general allegations that force defendants and the Court to guess and proceed in the dark are legally deficient and should be dismissed.

## II.   THE DEFENDANT PARTIES

The Complaint conflates and fails to distinguish among the Infirmary Defendants, though each is a separate corporate entity with its own separate identity, role, and participation (or lack thereof) in the arrangements made the subject of this case.

IHS is a not-for-profit health system with its principal place of business in Mobile, Alabama. Cmplt. ¶ 10. IHS is affiliated with Mobile Infirmary Medical Center ("Mobile Infirmary"). *Id.* ¶ 4. IMC is also a corporate affiliate of IHS and is a not-for-profit Alabama professional corporation that owns medical clinics. *Id.* ¶ 11. As to the medical clinics at issue in the allegations (DMC and Northside Clinics), IHS is only a corporate affiliate and IMC is only an owner. *Id.* ¶ 11. As this brief demonstrates, there are no allegations in the Complaint that subject IHS or IMC to any liability under the theories alleged.

DPG is an Alabama professional corporation that was owned during the relevant time period by a number of its physician employees. *Id.* ¶ 9. The DPG physicians provided the full scope of medical services at DMC clinic on a full-time basis pursuant to physician services

agreements.  *Id.* ¶¶ 3, 54, 57-63.  Beginning in April 2008 and through the relevant period, the DPG physicians also provided the full scope of medical services at Northside Clinic.  *Id.* ¶ 79.

## III.    PLEADING STANDARDS

A False Claims Act complaint must satisfy two pleading requirements – Federal Rules of Civil Procedure 8 and 9(b).  *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012).  To satisfy Rule 8, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

Rule 9(b) is more demanding.  It provides the heightened requirement that plaintiffs must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In the FCA context, Rule 9(b) requires the plaintiff to plead all elements (except for state of mind) with particularity; that is, *the complaint must allege specific details of the who, what, when, where, and how of not just the alleged improper practices, but also of the alleged false claims and false statements.  Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). This level of detail must be pled *as to each element.  Id.* (finding district court correctly dismissed complaint where plaintiff "provided the who, what, where, when, and how of *improper practices*, but he failed to allege the who, what, where, when, and how of *fraudulent submissions* to the government") (emphasis added); *Hopper v. Solvay Pharms., Inc*., 588 F.3d 1318, 1327 (11th Cir. 2009) (explaining district court did not err by finding complaint fell short

3

of Rule 9(b) where it "fail[ed] to assert the who, what, where, when, and how" of fraudulent submissions to the government).  The Government is required to plead "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."  *Matheny*, 671 F.3d at 1222 (citing *Hopper v. Solvay Pharms., Inc.*, 588 F.3d at 1324).  The Government has not done so here.

In addition, for a complaint to satisfy Rule 9(b) its allegations must contain "some indicia of reliability."  *Corsello*, 428 F.3d at 1012 (citing *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).  In the FCA context, indicia of reliability include "specific details regarding . . . the dates on which the defendants submitted false claims, the amounts of those claims, or the patients whose treatment served as the basis for the claims." *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302-03 (11th Cir. 2010) (without "these or similar details," the complaint "lack[ed] the 'indicia of reliability' necessary under Rule 9(b) to support its conclusory allegations of wrongdoing") (internal citations omitted).  To be sufficiently pled, a complaint must assert not only the who, what, where, when, and how of each element of a FCA violation, but must *also* assert specific details pertaining to those allegations of who, what, where, when, and how.

Rule 9(b) applies not only to the FCA Counts I through III but also to Counts IV and V. By its terms, Rule 9(b) extends to allegations of "fraud or mistake."  Therefore, Count IV for payment by mistake must be pled with particularity.  Rule 9(b) also applies to unjust enrichment claims when they are "premised on fraud."  *See United States v. Gericare Med. Supply, Inc.*, No.

4

99-0366, 2000 U.S. Dist. LEXIS 19661, at *29-30 (S.D. Ala. Dec. 11, 2000).[2]   Therefore the Government's Count V for unjust enrichment also must be pled with particularity.

A motion to dismiss brought under Rule 12(b)(6) tests the sufficiency of a complaint against the legal standards set forth in Rule 8 and, if applicable, Rule 9(b).   *See Acosta v. Campbell*, 309 Fed. Appx. 315, 317 (11th Cir. 2009).  If under the applicable legal standards, "a complaint fails to state a claim upon which relief may be granted, the district must dismiss it." *Chapman v. United States Postal Serv*., 442 Fed. Appx. 480, 482 (11th Cir. 2011).  Applying these legal standards, the entire Complaint must be dismissed as to the Infirmary Defendants.

## IV.   ARGUMENT

The Government's Complaint is devoid of the factual allegations necessary to state a claim upon which relief may be granted against the Infirmary Defendants.  The remedy should be dismissal.  The Government has investigated this case for two years while obtaining from the Infirmary Defendants almost 12,000 documents, six sworn civil investigative demand interviews, and numerous unsworn interviews.   Even with this extensive pre-complaint discovery, the Complaint fails to satisfy basic pleading standards.

---

[2] *See also United States ex rel. Citizens United to Reduce & Block Federal Fraud, Inc. v. Metropolitan Medical Center, Inc*., No. 89-cv-592, 1990 U.S. Dist. LEXIS 18339, at *7 (S.D. Fla. Jan. 11, 1990) ("Finally, since the unjust enrichment claim set forth in Count IV rests on fraudulent taking of money, in connection with the fraud alleged in Counts I and II, it too must satisfy Rule 9(b)."); *Cincinnati Life Ins. Co. v. Beyrer*, No. 12-2365, 2013 U.S. App. LEXIS 13729, at *21-22 (7th Cir. July 8, 2013) ("As best we can tell, appellant's promissory estoppel and unjust enrichment claims emerge out of a pattern of fraudulent conduct that she insinuates the appellees engaged in.  This falls under the Fed. R. Civ. P. 9(b) requirement that allegations of fraud must be pled with particularity."); *Hines v. Overstock.com, Inc.*, No. 09-cv-911, 2013 U.S. Dist. LEXIS 117141, at *30 (E.D.N.Y. Aug. 19, 2013) (finding that, where the underlying acts are allegedly fraudulent, "Federal Rule of Civil Procedure 9(b)'s particularity requirements apply to Plaintiff's unjust enrichment claim.").

### A.      The Government Failed to Sufficiently Plead All Counts as to IHS and IMC.

The Government does not state any claims for which relief can be granted against IHS or IMC, which are merely corporate affiliates to the DMC and Northside Clinics at issue in the allegations.  Being a related company to a company that is alleged to have committed an FCA violation is not sufficient to support a claim against the related company.  To support a claim against a corporate affiliate, the affiliated company must either be "directly liable for its own role in the submission of false claims" or "liable under a veil piercing or alter ego theory."  *United States ex rel. Pfeifer v. ELA Med., Inc.*, No. 07-cv-1460, 2010 U.S. Dist. LEXIS 45656, at *39 (D. Colo. Mar. 31, 2010) (quoting *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 60 (D.D.C. 2007)).  The Government has not plead either.

### 1.      The Government Failed to Sufficiently Plead Counts I through III Against IHS and IMC.

The Government's Complaint does not adequately plead Counts I through III against affiliated companies IHS and IMC, as it falls far short of sufficiently pleading either direct or indirect liability of either entity.  A "complaint must satisfy Rule 9(b) with respect to *each* defendant."  *United States v. Gericare Med. Supply, Inc.*, No. 99-366, 2000 U.S. Dist. LEXIS 19661 at *24 (S.D. Ala. Dec. 11, 2000) (dismissing complaint against defendant because complaint did not sufficiently allege defendant's role in fraud) (emphasis added) (citing *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1381 (11th Cir. 1997)).  Indeed, none of the "examples" of claims alleged in the Complaint identifies *any* claim submitted by either IHS or IMC, or *any* detail regarding how either IHS or IMC caused the submission of any claim, let alone any false claim.  Cmplt. ¶ 81, Ex. 2.  Nor are there any allegations supporting Count III

that a single false record or statement was made for the purpose of concealing, avoiding, or decreasing an obligation to pay money to the government, much less made by IHS or IMC.[3]

Instead of alleging any facts to support the direct liability of either IHS or IMC, the Complaint merely makes the conclusory statement that IHS and IMC "caused" the submission of false claims. Cmplt. ¶¶ 126-27. The Complaint does not allege any specific conduct by IHS or IMC that "caused" claims to be submitted, and this failure is fatal. *Klusmeier v. Bell Constructors, Inc.*, 469 Fed. Appx. 718, 721 (11th Cir. 2012) (affirming dismissal of complaint that failed to establish *how* contractual violations actually resulted in submission of false claims); *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (complaint failed to identify a single false claim submitted by certain defendants). The Complaint is devoid of details as to: (1) what, if any, specific alleged false claims IHS or IMC caused to be submitted; (2) who at IHS or IMC caused any false claim submission; (3) how that (unidentified) individual at IHS or IMC caused such submissions; or (4) when IHS or IMC allegedly caused such submissions.[4] Nor does the Complaint contain any information whatsoever regarding any false record or statement that was made by IHS or IMC for the purpose of concealing, avoiding, or decreasing an obligation to pay money to the government. Counts I through III should be dismissed as to IHS and IMC.

---

[3] The Government's failure to sufficiently plead Count III as to all defendants is discussed in greater depth in Section IV.B.2, p. 14.

[4] In fact, the Government failed to allege any dates when any claims were submitted by any defendant, requiring dismissal as to all defendants, as more fully discussed herein in Section IV.B.1, p. 12.

### 2. The Government Has Not Pleaded Counts IV and V with Sufficient Particularity Against IHS or IMC.

The Government also does not plead Counts IV and V with sufficient particularity against IHS and IMC.  Count IV – payment by mistake – alleges that the United States mistakenly paid monies to the clinics *DMC and Northside*, and that, therefore, the clinics DMC and Northside, as well as the affiliate IHS and the DPG physician group, were liable to make restitution to the United States.  Cmplt. ¶¶ 148-49.  The Government does not even mention IMC in Count IV, and only mentions IHS to make the general allegation that it is "liable." *Id.* ¶ 149. Similarly, Count V lumps all defendants together, mentioning neither IHS nor IMC, and summarily alleging that "Defendants were unjustly enriched" by "obtaining government funds to which they were not entitled."  *Id.* ¶ 152.  Lumping the defendants together does not meet Rule 9(b) standards, particularly where, as here, there are no facts alleged as to IHS or IMC.  A "complaint must satisfy Rule 9(b) with respect to each defendant."  *Gericare*, 2000 U.S. Dist. LEXIS 19661 at *24 (dismissing complaint including counts of unjust enrichment and payment by mistake against a defendant because claims did not sufficiently allege the defendant's role in the fraud) (citing *Brooks*, 116 F.3d at 1381); *Roberts v. Balasco*, 459 B.R. 824, 837 (M.D. Fla. 2011) ("The unique circumstances of each defendant's alleged fraudulent conduct must be pled on an individualized basis, without reliance on a collective grouping of defendants.").

The Government's failure to detail any conduct of IHS or IMC's from which claims of payment by mistake or unjust enrichment can arise is fatal, and Counts IV and V should be dismissed as to IHS and IMC.  Section IV.C. further addresses why Counts IV and V must fail as to *all* defendants, *see infra* p. 17.

### 3.    The Government Has Not Pleaded Veil-Piercing to State a Claim Against IHS or IMC.

In addition to not pleading direct liability for IHS or IMC, the Government's Complaint also does not even mention veil-piercing or other theories of indirect liability.  Instead, the Government has alleged there were some overlapping executives, employees, and managerial roles among the defendants and with Mobile Infirmary, and that IHS and IMC had "knowledge" of the manner in which DPG physicians were compensated.  Cmplt. ¶¶ 15-16, 126-27.  These allegations are insufficient.  A court can pierce the corporate veil between related entities only where the related entity "so dominated" the other entity "as to negate its separate personality." *Pfeifer*, 2010 U.S. Dist. LEXIS 45656, at *39 (quoting *Hockett*, 498 F. Supp. 2d at 60).[5] Nowhere in the Government's Complaint does it allege that IHS or IMC "so dominated" IMC or DMC as to negate their separate personalities to support veil-piercing.

Courts will not pierce the corporate veil lightly.  "[E]xcept in unusual circumstances, courts will not disregard the separate [corporate] identities."  *Pfeifer*, 2010 U.S. Dist. LEXIS 45656, at *39.  Courts require two elements to be satisfied to determine whether to disregard corporate form and impute the behavior of one entity to another entity: first, courts examine "whether there was such a unity of interest and ownership that the separate personalities of the [related entities] no longer existed."  *United States v. Universal Health Servs*., No. 1:07-cv-54, 2010 U.S. Dist. LEXIS 116432, at *9 (W.D. Va. Oct. 31, 2010) (considering whether the corporate veil should be pierced under alter ego theory).  Second, courts ask "whether respecting

---

[5] Federal law controls the veil-piercing question.  *See United States v. Pisani*, 646 F.2d 83, 86 (3d Cir. 1981) (determining that federal common law supplies veil-piercing rules for cases related to alleged Medicare overpayments); *Gunter v. Hutcheson*, 674 F.2d 862, 869 (11th Cir. 1982) (citing *Pisani* with approval, explaining that, in *Pisani*, "[t]he court held that a uniform federal rule governing the 'piercing of the corporate veil' should displace state law when medicare [sic] overpayments were at issue in order to protect the federal interests behind the Medicare program").

the corporate form would produce an inequitable result." *Id.* "If both elements are met, the [related company] is deemed to be the [other's] alter ego, agent, or mere instrumentality," and related corporate entity can be held accountable for the other's behavior. *Id.* at \*10.

Application of this first element requires evaluating "which formalities have been followed to maintain separate corporate identities." *Universal Health*, 2010 U.S. Dist. LEXIS 116432, at \*9. Factors that may evidence a lack of separate existence between corporate entities are the "commonality of officers and directors; an improper financial relationship between the [affiliated entities]; failure to maintain separate books, records, and offices; or that the property used by one is used by the other as its own." *Pfeifer*, 2010 U.S. Dist. LEXIS 45656, at \*40.

As to this first element, the Government only alleges that there were some overlapping executives, employees, and managerial roles among the defendants and with Mobile Infirmary. Cmplt. ¶¶ 15-16. The Government's allegations are insufficient to survive this motion to dismiss. *See, e.g., Universal Health Servs.*, 2010 U.S. Dist. LEXIS 116432, at \*10 (noting that even though "some overlap between the activities and affairs" of related entities was suggested, "the type of overlap…[was] hardly unusual in corporate structure," and that "courts routinely refuse to pierce the corporate veil based on allegations limited to the existence of shared office space or overlapping management, allegations that one company is the wholly-owned subsidiary of another, or that companies are to be considered as a whole") (internal quotations omitted).

Nor can the Government satisfy the second element that analyzes whether an inequitable result would follow should the corporate entities be respected as separate. The Government pleads no facts that would demonstrate an inequitable result. Such facts are necessary to satisfy veil-piercing to state a FCA claim against a corporate affiliate. *See Universal Health Servs.*, 2010 U.S. Dist. LEXIS 116432, at \*12-13 ("Without properly pleading that an inequitable result

would follow from respecting [the] corporate structure," the government's complaint "fail[ed] to state a claim for an alter ego action."). For alter-ego or other veil-piercing liability, there must be allegations that the related company "*abused the benefits of the corporate form* in order to improperly insulate itself from violations of the FCA" committed by its corporate affiliates. *Id.* at *12 (emphasis added). "[A] well-pled veil-piercing action alleges not only that an entity in the corporate structure has committed a fraud for which [a related entity] should be held vicariously liable," but also that "control" by the related entity was "utilized to perpetuate a fraud or other wrong." *Id.* (citing *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997)).

To be sure, the Government's allegations regarding the relationship among the entities and IHS and IMC's alleged knowledge of the manner in which DPG physicians were compensated are insufficient for veil-piercing. Cmplt. ¶ 126-27. Neither a close supervisory relationship between corporate entities nor knowledge of one entity of another's behavior is sufficient to pierce the corporate veil to state a FCA claim against the affiliated company. *Universal Health Servs.*, 2010 U.S. Dist. LEXIS 116432, at *11-13. Allegations of a corporate affiliate's knowledge of a related company's fraud, that the corporate affiliate "exercised significant supervision" over the related company, and that the corporate affiliate "fail[ed] to investigate or solve the [related company]'s false billing practices" – even taking all these factors together – "[do] not serve to impose vicarious liability on the [corporate affiliate] without piercing the corporate veil." *Id.* at *12-13 (citing *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 334 (5th Cir. 2008); *United States ex rel. Barlett v. Tyrone Hosp., Inc.*, 234 F.R.D. 113, 125-26 (W.D. Pa. 2006) (finding no vicarious liability against entity for FCA violations of related entity, because "knowledge [of violations] does not equate to causing the false claims and submission of false records")). Where, as here, the Government has "failed to plausibly plead

11

that [the corporate affiliate] and its [related companies] abused the corporate form, the allegations regarding [the corporate affiliate's] knowledge of fraud are . . . insufficient to survive a motion to dismiss." *Universal Health Servs.*, 2010 U.S. Dist. LEXIS 116432, at *13.

The Government's Complaint therefore fails to satisfy both parts of the veil-piecing test. Because the Government failed to sufficiently allege veil-piercing, and failed to sufficiently allege IHS or IMC's direct liability, its Complaint does not state any claim against IHS and IMC. All Counts must be dismissed as to IHS and IMC.

**B.      The Government Failed to Sufficiently Plead Counts I, II, and III Against All Defendants with the Required Particularity.**

**1.      The Government Failed to Plead Counts I and II with Sufficient Particularity.**

The Government's first and second counts fail to allege specific details of the who, what, where, when, and how of the actual submission of false claims with sufficient particularity to withstand this motion to dismiss as to *all* defendants.  Count I requires particularized pleading that the defendant "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval," and Count II requires particularized pleading that the defendant "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim."  *See* 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B).  To adequately plead the false claim, record, or statement required for these causes of action, a complaint must "identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result." *Matheny,* 671 F.3d at 1225.

Despite two years of investigation, review of thousands of documents and extensive interviews, the Government failed to identify with particularity these required details of the allegedly false claims, records, or statements at issue, including when the submissions were

made to the government.  The Government pleads only one narrative "example" of an allegedly false claim, (*see* Cmplt. ¶ 81), and a summary list of fourteen claims submitted by DMC clinic (*see id.* Ex. 2).  Even as to these claims, the Government identifies only the dates of service, not any dates of submission for payment.   The Eleventh Circuit requires dismissal absent *particularized pleading as to the specific dates on which claims are submitted.  Clausen*, 290 F.3d at 1311-12.

In *Clausen*, the plaintiff alleged the types of alleged false claims and provided initials of specific patients, specific dates of service, identification of claim forms, and the CPT codes used on those forms.  290 F.3d at 1304-06.  The Eleventh Circuit nonetheless affirmed the district court's dismissal, not only because "no copies of a single actual bill or claim or payment were provided," but also because the relator failed to "identify the dates on which those claims were presented to the government."  *Id.* at 1306, 1311-12; *see also Matheny*, 671 F.3d at 1225 ("In order to plead the submission of a false claim with particularity, a relator must identify the particular document and statement alleged to be false . . . [and] *when the statement was made*.") (emphasis added); *Hopper v. Solvay Pharms.*, 588 F.3d 1318, 1326-27 (11th Cir. 2009) (approving dismissal where complaint did not allege dates or times of submission of individual false claims).

The failure to plead *when* the allegedly false claims, statements, or records were submitted or presented to the government requires Counts I and II to be dismissed as to all defendants.  Here, as in *Clausen*, the Government provides some details for a small sample of claims such as dates of service, identification of claim forms, and CPT procedure codes used on those forms.  *Compare Clausen*, 290 F.3d at 1304-06, *with* Cmplt. ¶ 81 and Ex. 2.  And here, precisely as in C*lausen*, "no copies of a single actual bill or claim or payment were provided,"

and the plaintiff fails to "identify the dates on which those claims were presented to the government." *Id.* at 1306, 1311-12.

Rather than plead the dates of submission of allegedly false claims to the government, the Government merely alleges that claims were submitted "during the relevant period," a six-year period of time. This glaring lack of detail as to when claims were actually submitted to the government fails to meet the requirements of Rule 9(b) as applied by the Eleventh Circuit in *Clausen*. This requirement imposed by the Eleventh Circuit is not merely form over substance; the Government's general, allegations are impossible to meaningfully answer in their current form because the Infirmary Defendants cannot discern who supposedly took what action and when over the course of the six-year time period. The Government's failure to plead with particularity the dates on which any allegedly false claims were actually submitted to the government warrants dismissal of Counts I and II as to all defendants.

> **2.    The Government Failed to Plead Count III with Sufficient Particularity.**

The Government also failed to sufficiently plead Count III, a "reverse false claims" allegation, under Rule 8 and Rule 9(b) pleading standards. To plead a cause of action under this subsection of the FCA, the Government must plead the elements of a reverse false claims cause of action under the FCA as it existed before the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617 (2009), as well as the elements as amended by FERA. The pre-FERA reverse false claims provision, Section 3729(a)(7), applies to claims that were pending before June 7, 2008, while the post-FERA reverse false claims provision, Section 3729(a)(1)(G), applies to claims that were not pending until on or after that date. FERA § 4(f). The Government's Complaint does not meet either standard.

14

**a.   The Government Failed to Meet Pre-FERA Pleading Standards.**

The Government failed to meet the pre-FERA standard for pleading a reverse false claim.

To state a cause of action under the reverse false claims provision of the FCA pre-FERA, a

complaint must plead:

> (1) a false record or statement; (2) the defendant's knowledge of
> the falsity; (3) that the defendant made, used, or caused to be made
> or used a false statement or record; (4) for the purpose to conceal,
> avoid, or decrease an obligation to pay money to the government;
> and (5) the materiality of the misrepresentation.

*Matheny,* 671 F.3d at 1224.  Pursuant to Rule 9(b), "[c]onclusory assertions of these elements

without factual specifics will not suffice."  *United States ex rel. Barber v. Paychex, Inc.*, No. 09-

20990, 2010 U.S. Dist. LEXIS 83789, at *31 (S.D. Fla. 2010).  The Government does not plead

with particularity any false record or statement made for the purpose of concealing, avoiding, or

decreasing an obligation to pay money to the government.   Indeed, the Government offers

nothing more than a boilerplate recitation of the current post-FERA language (Cmplt. ¶¶ 145-

46).  As addressed below, the Government completely fails to plead any reverse false claim

under the pre-FERA standards.  Therefore, the Government's Count III must be dismissed as to

all claims pending before June 7, 2008.

Dismissal of these claims is supported by law.  A court in the Northern District of

Alabama dismissed a relator's reverse false claims cause of action noting that, while the

plaintiff's "theory *appears* to be that, under its agreement with the Department of Health and

Human Services, [the defendant] was required to remit to the government any funds that it

received to reimburse false claims . . . . that theory [was] not specifically developed in the

complaint."  *United States ex rel. Wilson v. Crestwood Healthcare, L.P.,* No. 11-3361, 2012 U.S.

Dist. LEXIS 69763, at *26 (N.D. Ala. May 18, 2012) (emphasis in original).  In that case, as

here, the plaintiff "made no specific allegations to support a reverse false claim," but rather "merely ma[de] a conclusory assertion that defendants 'used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money to the government.'" *Id.* at *25-26; *see also Barber*, 2010 U.S. Dist. LEXIS 83789, at *32 ("No facts are alleged to have been withheld by defendants or concealed from the government by defendants. In the context of a 'reverse false claims' action, the absence of factual particularity stating that the defendant engaged in a knowing deceit to keep money belonging to the government is fatal.") Reverse false claims are only actionable where the United States properly alleges facts supporting each element of such a cause of action with particularity; having failed to do so, Count III should be dismissed.

> **b.** **The Government Failed to Meet Post-FERA Pleading Standards.**

The Government's Complaint likewise fails under both avenues provided under the post-FERA reverse false claims provision for alleging a reverse false claim. The first avenue permits a cause of action against a defendant who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Again, the Government merely recites this boilerplate language without pleading with particularity the facts supporting each element, including the false records or statements material to an obligation to pay or transmit money or property to the government. A "formulaic recitation" of language of the statute will not do; details are required. *Twombly*, 550 U.S. at 555. Count III therefore does not state a claim under this first avenue.

The second avenue permits a cause of action against a defendant who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit

money or property to the Government." *Id.*  The Government cannot sustain its action under the second avenue, as it failed specifically to allege facts supporting that any Defendant concealed or knowingly avoided or decreased an obligation to pay the government.  In fact, the Government did not even correctly recite this test, omitting the word "improperly" from before "avoids or decreases" in the statute.  Cmplt. ¶ 145 (emphasis added).  The Government's Count III therefore fails Rule 8 and Rule 9(b) under the FCA both pre- and post-FERA.  Count III should be dismissed as to all Infirmary Defendants.

    **C.**    **The Government Failed to Sufficiently Plead Counts IV and V.**

        **1.**    **The Government Must Specify Whether Counts IV and V are State Common Law Claims or Federal Common Law Claims.**

The Government failed to plead whether its claims of payment by mistake (Count IV) and unjust enrichment (Count V) are based in state or federal common law.  The Infirmary Defendants are not on fair notice of the claims against them stated in Counts IV and V because each claim is so ambiguous that defendants cannot decipher the elements.  *See Twombly*, 550 U.S. at 555 ("Federal Rule of Civil Procedure 8(a)(2) requires . . . a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (internal quotations omitted).  In *United States ex rel. St. Joseph's Hospital v. United Distributors,* the court granted defendants' motion to dismiss similar claims of unjust enrichment and payment by mistake "[b]ecause it [was] unclear from the complaint whether the Government's claims of unjust enrichment and payment by mistake were pled under federal common or . . . state law."  918 F. Supp. 2d 1306, 1316 (S.D. Ga. 2013) (internal citations omitted).  Because the United States has failed to articulate whether its common law claims are state common law claims or federal common law claims, it does not satisfy Rule 8 or Rule 9(b) pleading standards.  Given this deficiency, the

17

United States has not put the defendants on fair notice of the claims against them.  *See Williams v. Aircraft Workers Worldwide, Inc.*, No. 09-411, 2010 U.S. Dist. LEXIS 52164, at \*13 (S.D. Ala. May 24, 2010) (concluding that the complaint did not state a claim for relief in part because it "forc[ed] the reader (and the defendant) to guess as to the nature…of [the] claims"); *Cobb v. Hawsey*, No. 07-353, 2007 U.S. Dist. LEXIS 53105, at \*17 (S.D. Ala. July 20, 2007) (explaining that, with the vagueness of one of the complaint's counts, "defendants [were] effectively shooting in the dark at a target they cannot see").  This Court should either dismiss Counts IV and V, following the *St. Joseph's Hospital* court's lead; or, in the alternative, it should require the Government to re-plead these counts anew so that defendants have a fair chance to respond.[6]

> ## 2. Regardless of Whether Counts IV and V are State or Federal Law Claims, These Counts Must Fail Because the Complaint Does Not Sufficiently Plead An Underlying FCA Violation.

Counts IV and V, whether federal or state, fail for the same reasons that the FCA Counts fail, as Counts IV and V appear to be based entirely on the alleged FCA violations asserted in Counts I through III.  Where causes of action rely on other causes of action that are insufficiently pled, they cannot stand.  *United States ex rel. Citizens United to Reduce & Block Federal Fraud, Inc. v. Metropolitan Medical Center*, No. 89-592, 1990 U.S. Dist. LEXIS 18339 (S.D. Fla. Jan. 11, 1990), at \*10 (dismissing counts of mistake and unjust enrichment because they "rel[ied] upon" a FCA count that was insufficiently pled).  The common law claims rely on allegations that the Government paid Medicare monies under the allegedly mistaken impression that the payments were based on proper claims, with the result that the defendants were not entitled to

---

[6] The Government did not sufficiently plead the elements of unjust enrichment or payment by mistake as to any defendant, whether under federal common law or state common law.  The Infirmary Defendants reserve the right to further develop these and other arguments if and when the Government defines whether it is proceeding under federal common law or state common law, as it is required to do.

receive those payments because their claims were improper.  Cmplt. ¶¶ 149, 152.  Because Counts IV and V rely on the underlying claims being improper under the FCA, pleading violations of the FCA underlie Counts IV and V, and they must fail for the same reasons that Counts I, II, and III fail.

### 3. Counts V Fails for the Additional Reason That It Does Not Distinguish Among Defendants.

An additional fatal blow to Count V is that it does not differentiate among the defendants, and instead alleges that "*Defendants* were unjustly enriched" by "obtaining government funds to which they were not entitled."  *Id.* ¶ 152 (emphasis added).  As discussed above in Section IV.A.2, p. 8, this failure to differentiate among defendants does not pass Rule 9(b) muster.

## V. <u>CONCLUSION</u>

Each of the Government's causes of action as to each Infirmary Defendant are deficient under the pleading requirements imposed by Rule 8 and Rule 9(b).  The Infirmary Defendants respectfully request that this Court dismiss the Government's Complaint.  If this Court does not dismiss Counts IV and V, the Infirmary Defendants alternatively request this Court to order a motion for a more definite statement regarding these counts, and an opportunity to file a responsive pleading thereto.

Dated:  October 7, 2013

Respectfully submitted,

/s/ Caine O'Rear III
Caine O'Rear III (OREAC6985)
Windy C. Bitzer (BITZW7315)
Hand Arendall LLC
P. O. Box 123
Mobile, AL 36601
Telephone:  251.432.5511
Facsimile:  251.694.6375
corear@handarendall.com
wbitzer@handarendall.com

Michael P. Matthews
*(pro hac vice admission pending)*
Foley & Lardner LLP
100 North Tampa Street, Suite 2700
Tampa, Florida  33602-5810
Telephone:  813.225.4131
Facsimile: 813.221.4210
mmatthews@foley.com

Lisa M. Noller
*(admitted pro hac vice)*
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, Illinois  60654-5313
Telephone:  312.832.4363
Facsimile:  312.832.4700
lnoller@foley.com

Heidi A. Sorensen
*(admitted pro hac vice)*
Foley & Lardner LLP
3000 K Street, N.W., Suite 600
Washington, D.C.  20007-5109
Telephone:  202.672.5596
Facsimile:  202.672.5399
hsorensen@foley.com

*Attorneys for Defendants IMC - Diagnostic*
*and Medical Clinic, P.C., IMC - Northside*
*Clinic, P.C., Infirmary Medical Clinics, P.C.,*
*and Infirmary Health System, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such to all counsel of record.


Dated:  October 7, 2013                                         /s/ Caine O'Rear III
                                                                Caine O'Rear III