UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. Christian M. Heesch, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 11-364-KD-B |
| DIAGNOSTIC PHYSICIANS GROUP, P.C.; IMC - DIAGNOSTIC AND MEDICAL CLINIC, P.C.; IMC - NORTHSIDE CLINIC, P.C.; INFIRMARY MEDICAL CLINICS, P.C.; and INFIRMARY HEALTH SYSTEM, INC. | ) ) ) ) ) ) ) | Oral Argument Requested |
| Defendant. | ) ) ) | |

**INFIRMARY DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS UNITED STATES' COMPLAINT IN INTERVENTION**[1]

---

[1] The United States' Complaint in Intervention (Doc. 30) ("Complaint") is cited herein as "Cmplt." by paragraph number. The Infirmary Defendants' Motion to Dismiss the United States' Complaint in Intervention (Doc. 59) is referred to herein as "Motion to Dismiss." The Infirmary Defendants' Brief in Support of their Motion to Dismiss (Doc. 60) is cited herein as "Inf. Br." by page number. The United States' Opposition to the Motion to Dismiss (Doc. 70) ("Opposition") is cited herein as "Opposition" or "Opp." by page number.

In an effort to avoid the dismissal required by binding precedent applied to the facts alleged in the Complaint, the Government improperly argues in its Opposition facts and theories not pleaded in its Complaint.   Even if the Government's theories were supported in the Complaint (which they are not), the Complaint still would be insufficient against the Infirmary Defendants, as the Government's positions lack legal support.  The Government relies heavily on cases outside this jurisdiction which are either inapplicable, nonbinding, or both.   Eleventh Circuit precedent requires dismissal of the Complaint, and the Government has not distinguished that precedent.  In fact, the Government does not attempt to distinguish the binding *Clausen* case, and only mentions *Corsello* – another Eleventh Circuit case requiring dismissal – in a final footnote requesting leave to re-plead.  The Government cannot avoid Eleventh Circuit law, and the Complaint should be dismissed as to all Infirmary Defendants.

I.      **ARGUMENT**

A.      **The Government Has Not Met Its Burden to Plead Violations of the FCA.**

The Government must plead violations of the False Claims Act ("FCA"); it cannot simply plead violations of the physician self-referral prohibition ("Stark Law") or Anti-Kickback Statute ("AKS"), as neither statute permits a standalone civil action.  *See* 42 U.S.C. § 1395nn; 42 U.S.C. § 1320a-7b(b).  The Government knows this, of course, which is why it does not assert causes of action for the alleged violations of these statutes.  Nonetheless, the Government argues that the Infirmary Defendants' Motion to Dismiss did not challenge its allegations of Stark Law or AKS violations.  This is a red herring, since the Government could not expect the Infirmary Defendants to move to dismiss non-existent causes of action.  Nor are defendants required or even permitted at the motion to dismiss stage to admit or deny factual allegations contained in a complaint.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (explaining that a motion to

1

dismiss for failure to state a claim "assum[es] that all the allegations in the complaint are true (even if doubtful in fact)").

The Government's recitation of the elements of the Stark Law and AKS does not diminish its obligation to plead allegations to support every element of its FCA counts.  Not one of the cases the Government cites stands for the proposition that pleading violations of the Stark Law or AKS is sufficient to state a claim under the FCA.  It is one thing to say that violations of the Stark Law and AKS "are actionable" under the FCA.  It is quite another to claim that alleging violations of the Stark Law or AKS is sufficient to state a claim under the FCA, for which the Government cites no support.[2]  In fact, Eleventh Circuit precedent is directly to the contrary. *See, e.g., Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) ("[l]iability under the False Claims Act arises from the submission of a fraudulent claim to the government, not the disregard of government regulations") (citing *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).  While a claim that results from a violation of the AKS or Stark Law could constitute a false claim, such a claim still must be pled with the requisite particularity otherwise required for alleging false claims under the FCA, including details of specific false claims actually submitted to the government.  *Clausen*, 290 F.3d at 1310; *Corsello*, 428 F.3d at 1012.  The Government has not done so here.

> **B.  The Government Has Not Sufficiently Identified Alleged False Claims Actually Submitted to the Government as the Eleventh Circuit Requires.**

In their opening brief, the Infirmary Defendants explained in detail how Eleventh Circuit precedent, most notably the *Clausen* and *Corsello* decisions, require dismissal because the

---

[2] For instance, in *United States ex rel. McNutt  v. Haleyville Med. Supplies, Inc.*, cited by the Government, the court found that pleading violations of the AKS are actionable under the FCA where pleading requirements of an FCA violation were met, including the "identification as false numerous specific claims."  423 F.3d 1256, 1260 (11th Cir. 2005).

Complaint did not plead the required particulars of claims actually submitted to the Government, including the Government's complete failure to plead the date of submission of a single claim. (Inf. Br. at 3-6, 12-14.)   The Government ignores this Eleventh Circuit precedent, not even attempting to distinguish *Clausen* or *Corsello*, instead citing a Fifth Circuit case that erroneously suggested the Eleventh Circuit has "moved away" from *Clausen*.  (Opp. at 13.)  The Government further argues that requiring the identification of specific false claims would impose a summary judgment standard (Opp. at 13), but this is hyperbole.  The Infirmary Defendants merely seek application of the Eleventh Circuit's Rule 9(b) motion to dismiss standard, and in support, have cited only to cases decided at the motion to dismiss stage of proceedings.[3]  The Government further argues that having to identify particular claims would be "unwieldy," but does not explain how it could not be bothered to plead the submission date for even a ***single*** claim, or why the Court should ignore Eleventh Circuit precedent in favor of Northern District of California precedent (Opp. at 14).  Well-settled Eleventh Circuit precedent plainly requires dismissal absent pleading as to specific dates on which at least some alleged false claims were submitted. *Clausen*, 290 F.3d at 1311-12 (plaintiff's failure to allege with any specificity when any actual improper claims were submitted to the Government was fatal to complaint); *Corsello*, 428 F.3d at 1012 (details of when alleged fraudulent acts occurred is essential).

The Government unsuccessfully tries to distinguish this precedent by primarily relying on two cases, *Hill* and *Walker*.  But neither diminishes the holdings of *Clausen* and *Corsello* that require the Government to plead the dates of alleged false submissions.  Notably, the Eleventh Circuit also has explicitly stated that, as an unpublished opinion, "*Hill* is not binding precedent"

---

[3] The same cannot be said of the Government, which liberally relies on cases at the summary judgment stage and other stages of litigation.  *See, e.g., LTV Educ. Sys., Inc. v. Bell*, 862 F.2d 1168 (5th Cir. 1989); *United States v. Rogan*, 459 F. Supp. 2d 692 (N.D. Ill. 2006).

and that, "[e]ven if *Hill* were a published opinion, the prior panel rule would dictate that *Clausen* supersedes *Hill* to the extent that *Hill* is inconsistent with *Clausen*." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358 n.15 (11th Cir. 2006). Indeed, *Hill* and *Walker* "do not call *Clausen*, *Corsello*, and *Atkins* into question, and they certainly do not override them." *United States ex rel. Hopper v. Solvay Pharms., Inc.*, 590 F. Supp. 2d 1352, 1362 (M.D. Fla. 2008), *aff'd*, 588 F.3d 1318 (11th Cir. 2009). The Eleventh Circuit has explicitly stated – more recently than the 2009 Fifth Circuit decision cited by the Government – that to the extent *Walker* might be read to require less specificity than *Clausen*, *Walker*, like *Hill,* should be disregarded based on the prior-panel-precedent rule. *See United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1303 n.4 (11th Cir. 2010).[4]

Hill and *Walker* are further distinguishable in that they suggest a lower pleading standard only for relators in non-intervened cases as related to pleading details of data peculiarly within the defendants' control, to which relators could not possibly have access. As identified by the plaintiff in *Walker*, "strict application of Rule 9(b) could result in substantial unfairness to private litigants who could not possibly have detailed knowledge of all the circumstances surrounding the alleged fraud" and that a less strict test may be applied where "it is impossible for the litigant to have access to the detailed knowledge necessary to otherwise meet the requirement of Rule 9(b)." *NCR Credit Corp. v. Reptron Elecs.*, 155 F.R.D. 690, 692 (M.D. Fla. 1994) (cited in plaintiff's reply brief in *Walker*, No. 5:02-cv-131, July 18, 2003, ECF Dkt. No.

---

[4] Likewise, *United States ex rel. Schubert v. All Children's Health System*, cited by the Government in its Notice of Supplemental Authority (Doc. 76), cannot diminish the significance of *Clausen*. In *All Children's*, the district court incorrectly stated that relators "are excused from identifying specific false claims . . . if the court can infer an 'indicia of reliability.'" No. 8:11-cv-1687, 2013 U.S. Dist. LEXIS 163075, at *31 (M.D. Fla. Nov. 15, 2013). There is no support for this assertion in *Clausen*. To state a claim under the FCA in satisfaction of Rule 9(b), a complaint must allege specific false claims *and* those allegations must have indicia of reliability. *Clausen*, 290 F.3d at 1310-11.

27, at 8).  *See also Hill v. Morehouse Med. Assocs.*, No. 02-14429, 2003 U.S. App. LEXIS 27956, at *10 (11th Cir. Aug. 15, 2003) (acknowledging the continued validity of *Clausen*'s holding, but noting that "Rule 9(b)'s heightened pleading standard may be applied less stringently, however, when specific factual allegations about the fraud is peculiarly within the defendant's knowledge or control") (internal citations omitted).  The Government, in contrast, has access to its own claims data, making it impossible to claim it has no access even if *Hill* and *Walker* were binding precedent, which they are not.  The Government has no excuse for failing to plead details of specific claims, including when they were allegedly submitted to the government.

The Government's allegation that claims were submitted "during the relevant period," a six-year period of time, does not come close to pleading "when" claims allegedly were submitted with the particularity required by Eleventh Circuit precedent.  If the Court were to allow this case to proceed now based on that exceedingly vague description, it would be in violation of Eleventh Circuit precedent.  The more prudent course would be to grant the motion to dismiss pursuant to Eleventh Circuit precedent and require the Government to plead the alleged false claims with particularity, including the dates of submission of the alleged false claims.

C.    **The Government Has Not Alleged Sufficient Facts to Plead Claims Against IHS and IMC.**

The Government has not sufficiently pleaded its claims against IHS or IMC.  Indeed, the Government concedes it "has not . . . allege[d] an alter-ego or veil-piercing theory" against either entity (Opp. at 25, n.5), leaving only one avenue for the Government to allege a sufficient cause of action against either entity – namely, by alleging with particularity that each defendant is "directly liable for its own role in the submission of false claims."  *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 60 (D.D.C. 2007).  The Government

has not done so (Inf. Br. at 6-7), and attempting to allege new facts in its Opposition does not save it.

**1.      The Government Has Not Pleaded Facts in its Complaint to Support an FCA Cause of Action Against IHS or IMC.**

The Government has not alleged with any particularity in its Complaint any direct role of IHS or IMC in the submission of any alleged fraudulent claims.   The Government makes conclusory arguments that IHS and IMC were "intrinsically involved" or "directly involved" in the alleged fraud, but without more, such generic statements are insufficient under Rule 9(b). *See Corsello*, 428 F.3d at 1012 ("[l]iability under the False Claims Act arises from the submission of a fraudulent claim to the government") (citing *Clausen*, 290 F.3d at 1311).

Eleventh Circuit law does not permit the Government to infer from circumstances that an entity caused the submission of false claims for payment merely because it has a corporate affiliation with another entity.  *Id.* at 1013 (the submission of false claims may not be "inferred from the circumstances").   The Eleventh Circuit has explained, "[w]e cannot make assumptions about a False Claims Act defendant's submission of actual claims to the Government . . . . " *Clausen*, 290 F.3d at 1312 n.21.   Making assumptions regarding claim submissions would "strip[] all meaning from Rule 9(b)'s requirement of specificity" and would "ignor[e] that the true essence of the fraud of a False Claims Act action involves an actual claim for payment and not just a preparatory scheme." *Id.*

The Government's allegations about IHS and IMC do not pass this well-established test, as, at most, the Government alleges these defendants' involvement in a preparatory scheme, without any connection – other than through impermissible assumptions – to involvement in claims submission.  For instance, the Government's argument that IHS or IMC "caused" the submission of false claims because its executives signed Physician Services Agreements

6

("PSAs") is an impermissible leap under *Corsello* and *Clausen*: there are no allegations as to how or why signing PSAs caused the submission of false claims.  (Opp. at 23-25.)  Indeed, there is no allegation that the PSAs or their terms were fraudulent or otherwise unlawful.  To the contrary, the Complaint describes the PSAs as requiring compliance with operative law, including the AKS and Stark Law (Cmplt. ¶¶ 54, 64), and alleges only fraudulent behavior by Defendants "***in practice***."  (*Id.*) (emphasis added).  However, no fraudulent practices attributed to IHS or IMC are alleged in the Complaint, nor are there other allegations pleading how IHS or IMC is directly liable for its own role in the submission of false claims.  The Complaint alleges that executives who signed the PSAs covering the alleged false claims did so in capacities for DMC, Northside Clinic, and/or DPG, and *not in any capacity for IHS or IMC*.  (Cmplt. ¶¶ 60, 66, 79.)  Likewise, the Government's argument that compensation arrangements were "designed to cause the submission of false claims" does not adequately explain how such arrangements were "designed" specifically to cause the submission of false claims, nor IHS or IMC's role in such.  Nor does the Government explain how certain statements allegedly made by Mark Nix or Chandler Bramlett "caused" the submission of false claims, just that such statements were made. (Opp. at 24-25.)  Allegations that a managing entity's executives had knowledge of fraudulent compensation arrangements involving the managed entity and of the managed entity's alleged submission of false clams (Opp. at 23-25) are not sufficient to withstand a motion to dismiss. *See, e.g., United States ex rel. Barlett v. Tyrone Hosp., Inc.*, 234 F.R.D. 113, 125-26 (W.D. Pa. 2006) (dismissing complaint alleging those facts and explaining that "knowledge does not equate to causing the false claims and submission of false records").

The cases cited by the Government do not save its reliance on unsupported inferences and generalities, and each case is distinguishable and non-binding on this Court in any event.  In

*United States ex rel. Riley v. St. Luke's Episcopal Hospital*, the complaint alleged that defendants participated in a "billing scheme" for the submission of false claims.  355 F.3d 370, 378 (5th Cir. 2004).  *United States ex rel. Lisitza v. Johnson & Johnson* involved allegations that the defendant drug company itself paid improper kickbacks to a pharmaceutical drug supplier, causing the supplier to submit false claims.  765 F. Supp. 2d 112, 124-25 (D. Mass. 2011).  In *United States ex rel. Main v. Oakland City University*, the complaint alleged the defendant, a university, itself falsely certified that it and its students were eligible for loans, grants, and scholarships, thereby directly causing the submission of allegedly false claims for loans, grants, and scholarships by its students.  426 F.3d 914, 916-17 (7th Cir. 2005).

Not only are *Riley*, *Lisitza*, and *Oakland* not binding precedent on this Court, but like *Corsello* and *Clausen*, each requires allegations connecting each defendant to the claims submission process, which the Government has failed to do in this case.  There are no allegations that IHS or IMC submitted any claims, falsely certified compliance in any claims, or had any other involvement in the claims submission process.  And, unlike in *Riley, Lisitza*, and *Oakland*, there are no allegations that IHS or IMC: engaged in any billing scheme to submit false claims, as in *Riley*; paid kickbacks that caused the submission of false claims, as in *Lisitza*; or, falsely certified compliance with applicable rules for the purpose of submitting false claims, as in *Oakland*.  Similarly unpersuasive is *United States ex rel. Schubert v. All Children's Health System*, where the allegations included that the chief executive officer "ignored Relator's new compensation plan" and fair market value analyses and himself arranged the compensation arrangements at issue.  2013 U.S. Dist. LEXIS 163075, at *4, 30.  Unlike in *All's Children*, there are no allegations in the Complaint that IHS or IMC was responsible for paying compensation

8

alleged to have been unlawful.[5]  This Court is left with only general, unsupported inferences and assumptions about the relationships between the parties, and therefore the Government's FCA claims against IHS and IMC must be dismissed.

### 2. The Government's Attempt to Assert New Facts Not Pleaded In Its Complaint against IHS and IMC Is Impermissible.

Not only does the Government's causation argument fail because it is insufficient against IHS and IMC, as set forth in the section above, but it also fails because it is not pleaded in the Complaint.  Through its Opposition, the Government attempts to add new facts not pleaded in its Complaint to try to strengthen its deficient claims.  This after-the-fact supplementation of the Complaint through an opposition to a motion to dismiss is impermissible, as "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).  Moreover, "a brief is not a proper mechanism for amending the pleadings." *Johnson v. Mobile County Sheriff Dep't*, No. 06-0821, 2007 U.S. Dist. LEXIS 50034, at *14 (S.D. Ala. July 9, 2007) (granting motions to dismiss).  Theories must be "specifically developed in the complaint," and defendants are entitled to certainty rather than a moving target. *United States ex rel. Wilson v. Crestwood Healthcare, L.P.*, No. 11-3361, 2012 U.S. Dist. LEXIS 69763, at *26 (N.D. Ala. May 18, 2012) (granting motion to dismiss FCA complaint).  It is impermissible to assert new factual allegations in an opposition to a motion to dismiss, and this Court should not consider them. *Erb v. Advantage Sales & Mktg. LLC*, No. 6:11-cv-2629, 2012 U.S. Dist. LEXIS 109076, at *8 (N.D. Ala. Aug. 3, 2012) (refusing to

---

[5] *All's Children* is further unpersuasive because the case it cited when declining to dismiss related corporate entities, *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F. Supp. 2d 1017 (S.D. Tex. 1998), is inapplicable.  In *Thompson*, the court found that the plaintiff sufficiently stated a "veil piercing theory." *Id.* at 1049.  The Government has acknowledged it has not alleged a veil-piercing theory (Opp. at 25 n.5), nor do the facts in the Complaint support such a theory (Inf. Br. at 9-12).

consider new factual allegations offered in plaintiff's opposition brief and granting motion to dismiss).

In the Complaint, the Government alleged that IHS and IMC "caused" the submission of false claims, noting in the same paragraph that each of these entities, "through its executives . . . had knowledge that DPG physicians were being compensated for referrals paid by Medicare." (Cmplt. ¶¶ 126-27).  This is the sum of allegations relating to IHS and IMC's alleged causation of the filing of false claims.  As set forth above (*supra*, p. 7), alleged "knowledge" does not state a claim.

Now, in response to a motion to dismiss, the Government tries to assert additional facts and theories (Opp. at 22-25) that cannot be considered, as they were not presented in the Complaint.  *St. George*, 285 F.3d at 1337; *Erb*, 2012 U.S. Dist. LEXIS 109076, at *8; *Wilson*, 2012 U.S. Dist. LEXIS 69763, at *26; *Johnson*, 2007 U.S. Dist. LEXIS 50034, at *14.  For example, in its attempt to show IHS or IMC "caused" the submission of false claims, the Government "assumes" that three individuals, Barre Sanders, Mark Nix, and Chandler Bramlett, were acting on behalf of their "multiple employers" when allegedly administering the compensation arrangements at issue, thereby causing the submission of false claims, and the Government further "assumes" their actions and knowledge are attributable to IHS and IMC. (Opp. at 24.)  These assumptions seek to impose liability on IHS and IMC merely because they have overlapping executives and managerial roles with other defendants.  Allegations of overlapping managerial roles are not sufficient to impose liability.  *United States v. Universal Health Servs.*, No. 1:07-cv-54, 2010 U.S. Dist. LEXIS 116432, at *2, *10 (W.D. Va. Oct. 31, 2010) (explaining that allegations of a defendant's overlapping managerial roles with another defendant "fail[s] to state plausible claims" against the defendant).  Moreover, these assumptions

10

do not match the factual allegations in the Complaint, which nowhere alleged that any IHS or IMC executive or employee caused the submission of claims to the government in any role with IHS or IMC.  These "assumptions" in the Opposition are not grounded in the Complaint and should be disregarded.  *St. George*, 285 F.3d at 1337; *Erb*, 2012 U.S. Dist. LEXIS 109076, at *8; *Wilson*, 2012 U.S. Dist. LEXIS 69763, at *26; *Johnson*, 2007 U.S. Dist. LEXIS 50034, at *14.

In addition and with regard to Sanders, nowhere does the Complaint allege that he was acting as an employee on behalf of *any* Infirmary Defendant with respect to Sanders' alleged involvement with the compensation of individual DPG physicians.  This new assertion was not raised as an allegation in the Complaint and must be disregarded.  *Id.*  The opposite inference (which the Government does allege) is in fact the only plausible one: Sanders was acting in his capacity as an employee of DPG, and not in a capacity as an employee of any Infirmary Defendant, when he is alleged to have been involved with the individual compensation of DPG physicians by their employer DPG.  (Cmplt. ¶¶ 72-77.)  Because the Government has not alleged sufficient facts in its Complaint to support that IHS or IMC is directly liable for its own role in the submission of false claims, neither is a proper defendant in this case.

> **D.   Common Law Claims Against IHS and IMC Fail Because the Government Does Not Plead Payment of Any Funds to IHS or IMC, Directly or Indirectly.**

The Government's argument to try to save its common law claims against IHS and IMC is that "direct" payment to those entities is not required, and indirect payment suffices.  (Opp. at 21-22.)  However, the Complaint does not allege the Government made even an indirect payment of government funds to IHS or IMC.  Rather, the Complaint seeks recovery of monies paid only to "IMC-DMC and IMC-Northside (directly or indirectly)."  (Cmplt. ¶ 148.)

Moreover, in the two cases the Government cites allowing recovery of indirect payments to a defendant, the courts in those cases found that defendants who received the indirect

payments had themselves paid large sums of money to induce government payments. *LTV Educ.*

*Sys., Inc. v. Bell*, 862 F.2d 1168, 1170-71 (5th Cir. 1989) (defendant, a school and a lender, paid

lenders and banks substantial improper financial incentives to issue federally-insured student

loans, resulting in government indirectly paying defendant in form of tuition payments from

students); *United States v. Rogan*, 459 F. Supp. 2d 692, 722-23 (N.D. Ill. 2006) (defendant, who

was chief executive officer of a hospital and owner of the hospital's operating and billing

company which was paid by the hospital based on the number of patient admissions, himself

paid hundreds of thousands of dollars to physicians to induce referrals to his hospital, resulting in

government payments). It is clear in both cases that the government was induced to make the

payments at issue almost entirely due to the behavior of the defendant who received the indirect

payment. *LTV*, 862 F.2d at 1175 (government's payments "depended heavily" on defendant's

actions in inducing federally-insured student loans through improper payments to lenders and

banks); *Rogan*, 459 F. Supp. 2d at 728 (government made payments "as a result of" chief

executive officer's actions). In contrast, not only are there no allegations that IHS or IMC

received indirect payments from the government, there are no allegations that IHS or IMC paid

financial incentives to induce the government to pay, nor that the government made the

payments as a result of the actions of IHS or IMC, further rendering these cases inapplicable and

unpersuasive.[6] As a result, all claims against IHS and IMC should be dismissed.

### E.    The Government's Attempt to Modify Count III is Impermissible and Insufficient.

The  Government impermissibly asserts a theory not pleaded in its Complaint to attempt

to state a reverse false claims cause of action in Count III. In the Complaint, the Government

---

[6] The applicability of *LTV* is further limited because the court in that case expressly limited its holding to cases related to federally insured student loans. *LTV*, 862 F.2d at 1175.

pleaded no factual allegations, much less any specific facts, that any Defendant concealed an obligation to pay money to the Government. Yet, in its Opposition, the Government for the first time and without any legal support hypothesized that Defendants' continuous submission of claims "concealed" the alleged obligation the Defendants had to refund money to the Government. (Opp. at 18.) The Government does not plead with particularity how the mere submission of claims could constitute "concealment." Pleading "concealment" requires pleading with "factual particularity…that the defendant engaged in a *knowing deceit* to keep money belonging to the government," and failure to so plead "is fatal." *United States ex rel. Barber v. Paychex, Inc.*, No. 09-20990, 2010 U.S. Dist. LEXIS 83789, at \*32 (S.D. Fla. July 15, 2010) (emphasis added) (granting motions to dismiss). Moreover, because this theory of concealment was not articulated in the Complaint, it should be disregarded. *St. George*, 285 F.3d at 1337; *Wilson*, 2012 U.S. Dist. LEXIS 69763, at \*26; *Johnson*, 2007 U.S. Dist. LEXIS 50034, at \*14.

**F.      The Government's Common Law Claims Against All Infirmary Defendants are Insufficient and Should Be Dismissed.**

The Government should have, but failed to, specify in its Complaint which common law causes of actions it was proceeding under, depriving the Defendants of required information to put them on requisite notice of the claims against them. *See Twombly,* 550 U.S. at 555 (requiring that a complaint "give the defendant fair notice of what the . . . claim is") (internal quotations omitted). Because the Government did not specify in its Complaint which common law causes of action it was proceeding under, the Infirmary Defendants did not have a fair chance to respond to the common law claims in their opening brief, and now the Government asserts that the Infirmary Defendants cannot respond in their reply brief either. (Opp. at 22, n.4). Having failed to elect either federal or state claims, the Government cannot now proceed on either, since doing so would deprive the Infirmary Defendants of their opportunity to be heard on these claims.

*United States ex rel. St. Joseph's Hospital v. United Distribs.,* 918 F. Supp. 2d 1306, 1316 (S.D. Ga. 2013) (granting defendants' motion to dismiss similar claims of unjust enrichment and payment by mistake "[b]ecause it [was] unclear from the complaint whether the Government's claims of unjust enrichment and payment by mistake were pled under federal common or…state law").

The Eleventh Circuit has recognized FCA cases asserting state law claims of unjust enrichment and payment by mistake, making it just as possible the Government could have been alleging state rather than federal claims. *See, e.g., United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236, 1238 (11th Cir. 1999) (government's complaint alleged violations of FCA and "state common law counts of mistake of fact and unjust enrichment"); *United States v. DBB, Inc.*, 180 F.3d 1277, 1279 (11th Cir. 1999) (same). The Government is incorrect that federal common law elements of unjust enrichment and payment by mistake are necessarily applicable here. The cases that the Government cites in support are improper applications of *United States v. Kimbell Foods*, 440 U.S. 715 (1979).[7]

Even if federal law controls the elements of the Government's common law claims, the Government has not sufficiently pleaded those claims because they are grounded in the FCA allegations that are not themselves sufficiently pled, as discussed in the Infirmary Defendants' opening brief. (Inf. Br. at 18-19.) In arguing otherwise, the Government asks this Court to find

---

[7] *Kimbell* explains that causes of action arising under federal programs are governed by federal law, and that federal law applies to determine whether rules affecting that cause of action are supplied from federal law or state law. *Id.* at 718, 727-28. To determine whether federal law or state law provides a rule, *Kimbell* analyzes three considerations. *Federal Deposit Ins. Corp. v. Morley*, 915 F.2d 1517, 1520, n.2 (11th Cir. 1990). The cases cited by the Government acknowledge that federal law applies, but do not discuss how. Importantly, federal law applies to the extent it supplies the analysis to determine whether to supply the applicable rule from federal law or state law. *Id.* At any rate, these cases misapplying *Kimbell* are outside of this jurisdiction and are not binding on this Court.

that the Government's ability to bring a payment by mistake claim is unrestricted.  (Opp. at 19.)

The Government cites *Wurts* for the proposition that the Government's right to recover payment

made by mistake is "not barred" without a manifestation of intent from Congress to bar that

right.  But *Wurts* relates solely to a statute of limitations issue, and does not give the Government

authority to pursue claims for payment by mistake that are not adequately pleaded.  *See United*

*States v. Wurts*, 303 U.S. 414, 416 (1938).

      As to the unjust enrichment claim, the Complaint does not satisfy the test the

Government sets forth for that claim in its Opposition (Opp. at 21): the Government's Complaint

does not allege that (1) it would be unreasonable for the Government to pay under the

circumstances; that (2) Defendants should not have expected payment under the circumstances;

or, that (3) society's reasonable expectation of person and property would be defeated by

payment.  The Government's post-hoc attempt to string together a viable claim in its Opposition

comes too late, and should be disregarded.  *St. George*, 285 F.3d at 1337; *Erb*, 2012 U.S. Dist.

LEXIS 109076, at *8; *Wilson*, 2012 U.S. Dist. LEXIS 69763, at *26; *Johnson*, 2007 U.S. Dist.

LEXIS 50034, at *14.

## II.    <u>CONCLUSION</u>

      The Government failed in its Complaint to plead any of its claims with the required

particularity against any Infirmary Defendant, and the Government's efforts to supplement its

Complaint through its Opposition are not permitted and do not help it state a claim.  The

Infirmary Defendants respectfully request that this Court dismiss all counts of the United States

Complaint in Intervention as to the Infirmary Defendants.

Dated:  December 3, 2013                    Respectfully submitted,

                                            /s/ Caine O'Rear III
                                            Caine O'Rear III (OREAC6985)
                                            Windy Cockrell Bitzer (BITZW7315)
                                            Hand Arendall LLC
                                            P. O. Box 123
                                            Mobile, AL 36601
                                            Telephone:  251.432.5511
                                            Facsimile:  251.694.6375
                                            corear@handarendall.com
                                            wbitzer@handarendall.com

                                            Michael P. Matthews
                                            *(admitted pro hac vice)*
                                            Foley & Lardner LLP
                                            100 North Tampa Street, Suite 2700
                                            Tampa, Florida  33602-5810
                                            Telephone:  813.225.4131
                                            Facsimile: 813.221.4210
                                            mmatthews@foley.com

                                            Lisa M. Noller
                                            *(admitted pro hac vice)*
                                            Foley & Lardner LLP
                                            321 North Clark Street, Suite 2800
                                            Chicago, Illinois  60654-5313
                                            Telephone:  312.832.4363
                                            Facsimile:  312.832.4700
                                            lnoller@foley.com

                                            Heidi A. Sorensen
                                            *(admitted pro hac vice)*
                                            Foley & Lardner LLP
                                            3000 K Street, N.W., Suite 600
                                            Washington, D.C.  20007-5109
                                            Telephone:  202.672.5596
                                            Facsimile:  202.672.5399
                                            hsorensen@foley.com

                                            *Attorneys for Defendants IMC - Diagnostic
                                            and Medical Clinic, P.C., IMC - Northside
                                            Clinic, P.C., Infirmary Medical Clinics, P.C.,
                                            and Infirmary Health System, Inc.*

**CERTIFICATE OF SERVICE**

       I hereby certify that on December 3, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such to all counsel of record.


Dated:  December 3, 2013                       /s/ Caine O'Rear III
                                         Caine O'Rear III