IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| *ex rel.*, Christian M. Heesch, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 11-0364-KD-B |
| ) | |
| DIAGNOSTIC PHYSICIANS GROUP, P.C.; ) | |
| IMC-DIAGNOSTIC AND MEDICAL ) | |
| CLINIC, P.C.; INFIRMARY MEDICAL ) | |
| CLINICS, P.C.; and INFIRMARY ) | |
| HEALTH SYSTEMS, INC., ) | |
| ) | |
|     Defendants. ) | |

## ORDER

This action is before the Court on the motion to dismiss the Relator Christian M. Heesch's third amended complaint and brief in support filed by Defendants IMC-Diagnostic and Medical Clinic, P.C., Infirmary Medical Clinics, P.C., and Infirmary Health System, Inc. (the Infirmary Defendants) (doc. 82, 83), the response filed by the Relator (doc. 97), and the Infirmary Defendants' reply (doc. 101). Also before the Court is the Relator's motion for leave to file his fourth amended complaint (doc. 122), the response in opposition filed by the Infirmary Defendants) (doc. 125), and the Relator's reply (doc. 137).[1] Upon consideration and for the

---

[1] The Relator's motion to seal his reply and exhibits (doc. 146) is GRANTED, and Documents 137 and 139-144 are SEALED. In his reply, the Relator attempts to place confidential deposition testimony and documentary evidence that is subject to the Protective Order before the Court as factual support for his argument that there is at a minimum an independent contractor relationship and therefore the motion for leave to amend is not futile. The Relator states that with this evidence, he "would be able to further assert with greater specificity the allegations already present in his Third Amended Complaint and the proposed Fourth Amended Complaint" and sets forth the additional allegations. Because the Court is assessing whether the motion for leave to amend is futile, the Court applies the same analysis as a Rule 12(b)(6) motion to dismiss for failure to state a claim. In that context, the Court has discretion to either allow evidence beyond the pleadings and convert the motion to one for summary judgment or decline to consider the evidence. In this case, the Court has reviewed the evidence and determined, as

reasons set forth herein, the motion to amend is DENIED as futile and the motion to dismiss the Relator's claim for retaliation and wrongful discharge as to the Infirmary Defendants is GRANTED.

The Relator brings his third amended complaint for "retaliation and wrongful and retaliatory discharge pursuant to the whistleblower retaliation provisions of the [False Claims Act], as amended, 31 U.S.C. § 3730(h)." (Doc. 66, p. 2) The statute provides that "[a]ny employee, contractor, or agent shall be entitled to all relief necessary to make" them "whole" if they are "discriminated against in the terms and conditions of employment because of lawful acts done . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h).

Pursuant to Rule 12(b)(6), the Infirmary Defendants move to dismiss the Relator's third amended complaint on basis that he fails to state a claim against them upon which relief may be granted. Specifically, the Infirmary Defendants argue that the Relator does not and cannot allege that he was an employee, contractor or agent of the Infirmary Defendants or that the Infirmary Defendants engaged or could have engaged in any retaliation against the Relator.

In deciding the motion, the "court must 'accept[] the factual allegations in the complaint as true and construe[] them in the light most favorable to the plaintiff.'" *Christman v. Walsh,* 416 Fed.Appx. 841, 844 (11th Cir. 2011) (quoting *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). "To survive a motion to dismiss the complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

---

explained herein, that it would be futile to allow the evidence, as it would not sustain the claim even under a summary judgment standard. Accordingly the Infirmary Defendants' motion to strike the Relator's reply (doc. 145) is DENIED as Moot.

679, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, at 556).

In the third amended complaint the Relator alleges that he had an employment agreement with Diagnostic Physicians Group, P.C., (DPG). The Relator further alleges that as a result of his investigation and report of DPG's and the Infirmary Defendants' violations of the federal "Stark Law" and "Anti-kickback Law", DPG leadership and DPG physicians retaliated against him by harassing him and ultimately voting to terminate his employment with DPG.

The Relator also alleges that DPG had an illegal compensation arrangement with the Infirmary Defendants by which he and other DPG physicians were paid for their services. In addition Relator alleges that the Infirmary Defendants provided DPG with office space, equipment, staffing, and other services for less than market value. However, the complaint fails to allege that the Relator is an employee, agent or contractor of the Infirmary Defendants. The complaint also does not allege how the Infirmary defendants retaliated against the Relator for engaging in protected activities. Thus the third amended complaint fails to state a claim against the Infirmary Defendants.

In an effort to address this deficiency, the Relator has filed a proposed fourth amended complaint. In paragraph 26, the Relator adds the allegation that he was an "employee, contractor or agent under 31 U.S.C. § 3730(h) . . . of all Defendants due to the inextricably intertwined relationships between Defendant DPG and Defendants IMC-DMC, IMC, and IHS". (Doc. 122-1, p. 9) In paragraph 67, he reiterates his status as an "employee, contractor or agent" of all Defendants. (Doc. 122-1, p. 21) The Relator attempts to support this allegation by adding

3

paragraphs 66 and 70, wherein he alleges that revenues generated by DPG physicians were assigned to the Infirmary Defendants, that they billed Medicare and Medicaid and collected the revenue, and then paid the DPG physicians (doc. 122-1 ¶ 66) and alleges that this illegal compensation scheme was devised and implemented by all Defendants (doc. 122-1, ¶ 70). Also, in paragraph 69, the Relator adds an allegation that the Infirmary Defendants had sole control over "whether to extend, suspend or revoke [his] privileges at its hospitals, such as Mobile Infirmary, and affiliated clinics including Defendants IMC-DMC and IMC and without their authorization, [he] was incapable of providing physician services with Defendant DPG." In his prayer for relief, he adds a prayer for reinstatement of his hospital and clinic privileges by the Infirmary Defendants in addition to his prayer in his third amended complaint for reinstatement of all available medical and hospital privileges with Defendants. (Doc. 122-1, p. 32)

Construing the allegations in the fourth amended complaint liberally, it appears that DPG and the Infirmary Defendants had a billing and compensation relationship, a landlord-tenant relationship for use of the Infirmary Defendants' facilities, and a licensee relationship based upon the hospital, medical and clinical privileges extended to DPG physicians by the Infirmary Defendants.[2] Because it is alleged that DPG physicians must have clinic and hospital privileges with the Infirmary Defendants in order to provide physician services for DPG and that the Infirmary Defendants had the control to extend/revoke these privileges, it is reasonable to infer that the Infirmary Defendants had the capacity to exert some control over a physicians continued employment with DPG. Also a reasonable inference could be drawn from the allegations that the Infirmary Defendants had some control over the amount of compensation that the Relator

---

[2] The Relator makes no allegation that the Infirmary Defendants were or ever have been shareholders in DPG or had any financial interest in DPG.

received. Thus, the Court finds that it is plausible that the facts may ultimately establish that the Relator had an "employer type" relationship with the Infirmary Defendants for purposes of the whistleblower provisions of the False Claims Act. *United States ex rel. Abou–Hussein v. Science Applications Int'l. Corp.*, 2012 WL 6892716, at * 3 (D.S.C. May 3, 2012) ("[T]he removal of the term 'employer' by the 2009 amendment to § 3730(h) was a device to accommodate the broader group of potential plaintiffs who are in employee type roles but who may not technically be employees and the broader group of potential defendants who are in employer type roles but may not technically be employers.")

However, the Relator must have more than the standing to file a claim against the Infirmary Defendants. He must actually have a plausible claim of retaliation against the Infirmary Defendants. In regard to allegations of retaliation, the proposed fourth amended complaint alleges specific acts of retaliation by DPG leadership and DPG physicians. The complaint then concludes that the "Defendants' retaliatory discharge of Dr. Heesch was motivated by his engagement in protected activities". (Doc. 122-1, p. 30) Despite the use of the word "Defendants" there is no allegation of any specific act of retaliation by the Infirmary Defendants or even that the Infirmary Defendants acted in concert with DPG regarding the Relator's harassment or termination. Specifically, the Relator has not alleged any conduct on the part of the Infirmary Defendants to show that they retaliated against him "in the terms and conditions of employment" because he engaged in protected conduct. Although the Relator has requested reinstatement of his hospital and clinic privileges, it is noteworthy that he has not alleged that the Infirmary Defendants terminated these privileges based on his engagement in protected activities.

It appears that the Relator's argument that the Infirmary Defendants are liable for DPG's

actions relies on a conclusion that DPG's acts of retaliation are imputed to the Infirmary Defendants based on the allegation that DPG and the Infirmary Defendants are "inextricably intertwined".³ The problem is that the Relator has cited neither facts nor law to support this conclusion. To be clear, to the extent the Relator is concluding that DPG employees were acting as agents of the Infirmary Defendants when they harassed and terminated him, he has not alleged any facts that plausibly support this claim.

Accordingly, the Court finds that the proposed fourth amended complaint fails to state a plausible claim for retaliation against the Infirmary Defendants and is therefore futile.

**DONE** and **ORDERED** this the 11th day of April 2014.

**s / Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

³ The Relator has cited in his reply certain documents and testimony which might support the contention that the Infirmary Defendants had an "employer-type" relationship with DPG physicians. However, they do not support the conclusion that liability for DPG's retaliatory acts are therefore imputed to the Infirmary Defendants.