## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Ex rel. Christian M. Heesch, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 11-000364-KD-B |
| | ) | |
| DIAGNOSTIC PHYSICIANS GROUP, | ) | |
| P.C., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This action is before the Court on Defendants IMC-Diagnostic and Medical Clinic, P.C., IMC-Northside Clinic, P.C., Infirmary Medical Clinics, P.C., and Infirmary Health System, Inc.'s Motion to Dismiss (Doc. 59). The motion has been fully briefed and has been referred to the undersigned Magistrate Judge for entry of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After careful consideration, the undersigned recommends that the motion be granted in part, and denied in part.

## I.  Background

This action was originally filed by relator, Christian M. Heesch, against the above named Defendants and Diagnostic Physicians Group, P.C. based on alleged violations of the False Claims Act ("FCA"). After investigation, the Government

announced on June 28, 2013, that it had elected to intervene as to certain claims made by the relator against Defendants. (Doc. 28). On August 7, 2013, the Government filed its Complaint in Intervention. (Doc. 30). In its Complaint, the Government alleges that Defendant Infirmary Health System ("Infirmary Systems") is the largest non-governmental health care system in Alabama, and that in the late 1980s, it created Infirmary Medical Clinic, P.C. ("IMC") in order to acquire physician practices and to establish new clinic subsidiaries, including IMC-Diagnostic and Medical Clinic, P.C. ("IMC-Diagnostic") and IMC-Northside Clinic, P.C. ("IMC-Northside"). (Id. at 3-4).

According to the Government, IMC oversees IMC-Diagnostic and IMC-Northside, and with the approval of Infirmary Systems and its Board of Directors, entered into contractual agreements or physician service agreements with individual physicians and physician groups to provide physicians (as independent contractors) to IMC-Northside and IMC-Diagnostic. (Id.). The Government contends that DPG, a private corporation owned and operated by physicians, is one such physician group with whom IMC contracted. (Id.).

The Government further alleges that DPG and IMC-Diagnostic were parties to a Physician Services Agreement which was signed in 1997, and provided that DPG and its

physicians would be responsible for all physician services at IMC-Diagnostic, that IMC-Diagnostic would be responsible for all overhead, including office space and non-physician personnel, equipment and billing services, that DPG would be paid a sum equal to a percent of collections received as compensation for services rendered by DPG and its physicians, and that the parties would comply with all applicable laws and regulations, including the Ethics in Patient Referrals Act, as amended (the "Starks Act"). (Id. at 17-27). The Government contends that between July 2005 through December 2011, IMC-Diagnostic billed Medicare for testing and designated health services that were referred by DPG physicians, and often performed by IMC-Diagnostic personnel on equipment owned by IMC-Diagnostic. The Government contends that the payments made to DPG were in turn paid to the individual physicians and thus resulted in the DPG physicians receiving payment for the referral of designated health services, some of which the DPG physicians did not personally perform, in violation of the Stark Law. (Id.).

The Government also contends that beginning on April 1, 2008, IMC-Northside entered a similar agreement with DPG, and this arrangement likewise resulted in individual DPG physicians rendering service (as independent contractors) at IMC-Northside and receiving payment for the referral of

designated health services, some of which they did not personally perform in violation of the Stark Law. (Id.).

The Government maintains that Defendants made these payments knowingly and in violation of the False Claim Act ("FCA"), and that the Defendants made the payments to keep DPG and its physicians affiliated with Infirmary Health, to prevent them from affiliating with competitors and to induce DPG physicians to refer federal healthcare business to IHS subsidiaries IMC-Diagnostic and IMC-Northside and Mobile Infirmary Medical Center ("Mobile Infirmary") in violation of the Anti-Kickback Statute and the FCA. (Id.).

As noted supra, the Government filed a complaint in intervention. In count one of the complaint, the Government alleges violations of 31 U.S.C. § 3729 (a)(1) and (a)(1)(A) of the FCA. Specifically, the Government contends that Defendants knowingly presented or caused to be presented, false and fraudulent claims for payment or approval to the United States, including claims for reimbursement for designated health services that violated the Stark Law, as well as false and fraudulent claims for reimbursement by Medicare, for services provided in violation of the Anti-Kickback Statute. (Id. at 33). In count two of the complaint, the Government alleges violations of 31 U.S.C. § 3729 (a)(1)(B). Specifically, the Government contends that

DPG, IMC-Diagnostic and IMC-Northside knowingly made or caused to be made false certifications and representations on CMS-8551, CMS-855B and CMS-88R forms for the purpose of getting false or fraudulent claims paid and approved by the United states, and that said statements were material to the United States' payment of the false claims. (Id. at 33-34).

In count three of the complaint, the Government alleges violations of 31 U.S.C. § 3729(a)(7) and (a)(1)(G) of the False Claims Act. Specifically, the Government alleges that Defendants knowingly made and used or caused to be made false records or statements material to an obligation to pay or transmit money to the United States or knowingly concealed or avoided an obligation to pay or transmit money to the United States. (Id. at 34). In count four of the complaint, the Government alleges that it is entitled to recover monies paid by the United States to IMC-Diagnostic and IMC-Northisde by mistake. According to the Government, it did not have knowledge of material facts, namely that these Defendants were seeking reimbursement for claims by DPG physicians who were in a financial relationship prohibited by the Stark Law and the Anti-Kickback Statute. The Government thus contends that IMC-Diagnostic, IMC-Northside, DPG and Infirmary Health are liable to make restitution to the United States for the amounts of the payments made in error to them by the United States. (Id.

at 35). In count five of the complaint, the Government alleges that by directly or indirectly obtaining government funds to which they were not entitled, Defendants were unjustly enriched and are liable to account for and pay such amounts or the proceeds therefrom to the United States. (Id.)

Defendants Infirmary Health, IMC, IMC-Diagnostic and IMC-Northisde ("the Infirmary Defendants") filed the instant motion to dismiss and seek the dismissal of all claims against them. (Docs. 59, 60, 77). According to Defendants, in counts one through three, the Government has not sufficiently asserted facts showing a basis for direct or indirect liability against either Infirmary Health or IMC. Defendants assert that there is no allegation that either Infirmary Health or IMC submitted any claim or caused any claim to be submitted to Medicare, and the fact that they are corporate affiliates to IMC-diagnostic and IMC-Northside is not a sufficient basis upon which to maintain a claim against them. With respect to counts four and five, Defendants argue that IMC is not mentioned in count four, and that in count five, the Government has simply lumped all the Defendants together without detailing any conduct of Infirmary Health and IMC from which claims of payment by mistake or unjust enrichment can arise. (Id.). The Defendants also argue that the Government's complaint does not even mention piercing the

corporate veil as a basis of liability with respect to Infirmary Health and IMC, and that in any event, the Government's assertion of some overlapping between the officers, executives and employees of the Infirmary Defendants, and of alleged knowledge by Infirmary Health and IMC of the manner in which DPG physicians would be compensated, is not sufficient to sustain claims against either Defendant. (Id.).

Defendants also contend, with respect to all of the Infirmary Defendants, that the Government has failed to allege facts with the required particularity for counts I, II, and III. Specifically, Defendants assert that with respect to counts one and two, the Government has had two years to investigate the claims but has nevertheless failed to provide the specific details of the who, what, where, when, and how of the actual submissions of the false claims. Defendants also contend that while the Government has provided some details for a small sample of claims, no copies of an actual bill were provided, and no specific dates were alleged. (Id.). In regards to count three, the Defendants contend that the Government has failed to meet the pre or post FERA standard for pleading a reverse false claim. Specifically, Defendants argue that the Government has not made specific allegations but has instead made a conclusory allegation that Defendants

used a false statement or record to conceal or avoid or decrease an obligation to pay or transmit money to the Government. (Id.). Defendants further contend that the Government did not cite the correct post FERA standard for a reverse false claim and did not allege facts in support of its contention that Defendants knowingly avoided or decreased an obligation to pay the Government. (Id.).

Defendants assert that counts four and five are also due to be dismissed because the Government failed to specify whether the claims are state common law claims or federal common law claims. (Id.). Additionally, Defendants argue that the claims should be dismissed because they derive from the alleged violations set forth in counts one through three, and because no facts supporting counts one, two and three have been sufficiently alleged, counts four and five should be dismissed along with counts one through three. (Id.). Defendants also assert that count five should be dismissed because it does not differentiate among the defendants, but instead lumps them all together.

The Government has responded in opposition to the motion, and argues that in regards to each count, it has plead with sufficient particularity the necessary elements for a cause of action and has stated claims upon which relief can be granted. (Doc. 70).

## II.    **Legal Standards**

### A. Motions to Dismiss

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts the non-moving party's factual allegations as true. <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). Moreover, the rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), the Supreme Court explained that while a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations in order to withstand attack, the complaint must however contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. <u>Id</u>. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

## B.    The Stark Amendment

The Stark Amendment to the Medicare Act, 42 U.S.C. § 1395nn, "was enacted to address overutilization of services by physicians who stood to profit from referring patients to facilities or entities in which they had a financial interest." United States ex rel. Schubert v. All Children's Health System, 2013 U.S. Dist. LEXIS 163075, 2013 WL 6054803, *4 (M.D. Fla. November 15, 2013 (quoting U.S. ex rel. Drakeford v. Tuomey Healthcare Sys., Inc., 675 F. 3d 394, 397 (4th Cir. 2012). "Generally, the Stark Amendment prohibits a physician who has a 'financial relationship' with an entity-such as a hospital-from making a 'referral' to that hospital for the furnishing of certain 'designated health services' for which payment may be made by the United States under the Medicare program." Id. Under the Stark Amendment, a physician has a "a financial relationship" with an entity if the physician has "an ownership or investment interest in the entity" or "a compensation arrangement" with it. 42 U.S.C. § 1395nn(a)(2). The term "compensation" includes any remuneration, "directly, indirectly, overtly or covertly, in cash or in kind." Drakeford, 675 F. 3d. at 398; 42 U.S.C. § 1395nn(h)(1)(B).

## C. The False Claims Act

The False Claims Act (FCA) imposes liability on any person who (1) knowingly presents, or causes to be presented, a false

or fraudulent claim for payment or approval or (2) knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(A)-(B). The FCA further imposes liability on "any person who. . .knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729 (a)(1)(G).

**D. Fed. R. Civ. P. Rule 9(b)**

Claims of fraud brought pursuant to the FCA must comply with the particularized pleading requirements of Fed. R. Civ. P. 9(b). U.S. ex rel. Clausen v. Lab. Corp. of Am., 290 F. 3d. 1301, 1308-09 (11th Cir. 2002). To state a claim under the False Claims Act that complies with Rule 9(b), "the complaint must allege 'facts as to time, place and substance of the defendant's alleged fraud" [and] "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" Corsello v. Lindcare, Inc., 428 F. 3d 1008, 1012 (11th Cir. 2005)(quotation omitted); see also U.S. ex rel. Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F. 3d 562, 567-68 (11th Cir. 1994). Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint.

## III. **Analysis**

### A. Count One

As noted supra, the Infirmary Defendants contend that the Government has failed to proffer sufficient allegations tying Infirmary Health and IMC to any of the alleged wrongful acts. They further contend that the Government has not alleged facts with the particularity required by Rule 9(b) to support liability against the Infirmary Defendants with respect to the claims raised in counts I, II, and III. Turning first to Count one, the Government alleges that Defendants presented or caused to be presented false claims for payment or approval to the United States, including claims for reimbursement of designated health services that violated the Stark Law, as well as false and fraudulent claims for reimbursement by Medicare, for services provided in violation of the Anti-Kickback Statute.[1]

The Courts have made clear with regards to an FCA cause of action, Rule 9(b) requires a plaintiff to not only provide the "who, what, where, when and how of improper practices" but also the "who, what, where, when, and how of fraudulent submissions

---

[1] The False Claims Act subjects to civil liability "any person who. . .knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

to the Government." <u>Corsello v. Lincare, Inc.</u>, 428 F. 3d 1108, 1014 (11th Cir. 2005)( per curiam) (internal quotation marks omitted); <u>see also</u> <u>Matheny v. Medco Health Solutions, Inc.</u>, 671 F.3d 1217, 1222 (11th Cir. 2012) ("[t]he particularity requirement of Rule 9(b) is satisfied if the complaint alleges 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.")(quoting <u>Hopper v. Solvay Pharmaceuticals, Inc.</u>, 588 F.3d 1318, 1324 (11th Cir. 2009)).

The undersigned finds that the Government's allegations in counts one and two satisfy Rule 9(b)'s pleading requirements with respect to Defendants IMC-Diagnostic and IM-Northside. In count one of the complaint, the Government alleges the who - namely IMC-Diagnostic, IMC-Northside and DPG; the what - false claims for payment or approval to the United States including claims for reimbursement of DPG for designated health services that DPG physicians referred but did not perform in violation of the Stark Law and the Anti-Kickback statute; the when - IMC-Diagnostic submitted said false claims between July 2005 and December 2011, while IMC-Northside submitted said false claims between April 2008 and 2011; the where - IMC-Diagnostic operates a clinic located on Spring Hill Avenue in Mobile, and IMC-Northside operates a clinic located in Saraland, Alabama; and

the how - IMC-Diagnostic and IMC-Northside had agreements with DPG whereby DPG physicians provided medical services to IMC-Diagnostic and IMC-Northside, and they also had an arrangement through which DPG physicians referred patients to IMC-Northside and IMC-Diagnostic for various tests and designated health services; IMC-Northside and IMC-DNC billed Medicare for the testing and designated health services, some of which was not performed by DPG physicians but was instead performed by IMC-Diagnostic employees on IMC-Diagnostic equipment; yet, IMC-Northside and IMC-Diagnostic paid DPG for the physician referrals, and DPG in turn compensated the individual DPG physicians for said referrals. (Id. at 17-33).

In its complaint, the Government offers as an example of false claims submitted to Medicare by IMC-Northside and IMC-Diagnostic, a set of nuclear heart imaging tests that were referred on June 23, 2009 by a DPG physician who was assigned to IMC-Northside. According to the Government, the tests were performed at IMC-Diagnostic, but IMC-Northside billed Medicare for the technical component of the tests, while IMC-Diagnostic billed Medicare for the professional component of the same tests. The Government contends that none of the DPG physicians at IMC-Northside were cardiologists, and IMC-Northside did not have the equipment necessary to perform the nuclear cardiology imaging tests. (Doc. 30 at 23).

In addition, along with its complaint, the Government attached a listing of over fifty DPG physicians who allegedly participated in the improper financial arrangement through which they received improper compensation for the above-described referrals to IMC-Diagnostic and/or IMC-Northside. (Doc. 30-1, Ex. 1). The listing includes the name of each referring physician and the starting and ending dates of their referrals. Additionally, Exhibit 2, which is also attached to the Government's complaint, includes examples of alleged false claims submitted to Medicare by IMC-Diagnostic between 2005 and 2011. (Doc. 30-2, Ex. 2). The listing includes the provider name, the claim number, the date of the claim, the specific procedure for which reimbursement was sought, a description of the procedure, the place of service, the amount paid for the service, and the name of the referring physician. (Id.)

Based upon the above, the undersigned finds that the Government has plead facts with particularity against Defendants IMC-Northside and IMC-Diagnostic so as to satisfy the requirements of Rule 9(b) for count one. Specifically, the Government has alleged how, when, and where these Defendants were knowingly involved in an arrangement whereby IMC-Northside (during the 2008 through 2011 time frame) and IMC-Diagnostic (during the 2005 through 2011 time frame) received referrals from DPG physicians for designated health services and in turn

submitted claims to the Government for said services, and then compensated the individual DPG physicians, through DPG, for the referrals in violation of the Stark Law and the Anti-Kickback statute. These allegations, if proven, will establish a violation of the FCA.

The undersigned finds that the same does not hold true with respect to the Government's assertions regarding Infirmary Health and IMC. The Government alleges that Infirmary Health created IMC in order to establish new clinic subsidiaries including IMC-Diagnostic and IMC Northside, that IMC owns and operates IMC-Diagnostic and IMC-Northside, and that with the approval of Infirmary Systems and its Board of Directors, IMC entered into contractual agreements or physician service agreements with individual physicians and physician groups to serve as physicians (on an independent contractor basis) for IMC-Diagnostic and IMC-Northside.

While the Government maintains that Infirmary Health, IMC, IMC-Diagnostic and IMC-Northside are interrelated, and that they share many of the same officers, executives and employees, some of whom had knowledge of the improper arrangement between IMC-Diagnostic, IMC-Northside and DPG which resulted in the presentment of false claims to Medicare for designated health services referred by DPG physicians, and the payment to the individual DPG physicians for the above-referenced referrals,

"these generalized allegations do no more than to formulaically recite the action's elements without adequately connecting the parent or [related entities] to the records and statements of the subsidiaries." United States v. Universal Health Servs., 2010 U.S. Dist. LEXIS 116432, *6, 2010 WL 4323082, *2 (W.D. Va. Oct. 31, 2010)(citing Twombly, 550 U.S. at 555). In order to properly assert that the parent or related entities actively engaged in a false claim violation, the Government must plausibly allege "some degree of participation by the parent in the claims process." Id. (quoting United States ex rel. Hockett v. Columbia/HCA Healthcare Corp., 498 F. Supp. 2d 25, 59-60 (D.D.C. 2007).

In Universal Health Servs., Inc., the court held that piercing the corporate veil based on alleged violations of the FCA requires an examination under federal law of 1) whether there was such a unity of interest and ownership that the separate personalities of the parent and the subsidiary no longer existed; and 2) whether respecting the corporate form would produce an inequitable result. Id., 2010 U.S. Dist. LEXIS 116432 at *9, 2010 WL 432308 at *3. The Court further observed that the Government's allegations suggesting some overlap between the activities and affairs of the defendant entities was hardly unusual in the corporate structure, and that "courts routinely refuse to pierce the corporate veil based on

allegations limited to the existence of shared office space or overlapping management, allegations that one company is the wholly-owned subsidiary of another, or that companies are to be 'considered as a whole.'" Id., 2010 U.S. Dist. LEXIS at *10, 2010 WL 432308 at *4. See also United States ex rel. Reid Lawson v. Aegis Therapies, Inc., 2013 U.S. Dist. LEXIS 154899, *12, 2013 WL 5816501, *5 (S.D. Ga. 2013) ("Because the Government fail[ed] to assert facts sufficient to show plausible liability under the FCA based on Corporate Defendants' abuse of their corporate forms, the Complaint is insufficiently pleaded.").

The undersigned finds that while the Government has alleged that Infirmary Health established IMC, that IMC established IMC-Diagnostic and IMC-Northside, that there is overlap among the officers, executives and employees of the Infirmary Defendants, and that some of the shared leadership knew of the improper arrangement with DPG and the presentment of the false claims, these general assertions does not support a claim for vicarious liability against Infirmary Health and IMC because "knowledge [of violations] does not equate to causing the false claims and submission of false records." Universal Health Services, 2010 U.S. Dist. LEXIS 116432 at *13, 2010 WL 432308 at *4. Because the Government has failed to plausibly plead that Infirmary Health and IMC presented or caused to be presented false claims,

and have further failed to put forth facts suggesting that there was such a unity of interest and ownership between the Infirmary Defendants that separate personalities of the entities no longer exist, or that respecting the distinct corporate forms would produce an inequitable result, the Government's claims against Infirmary Health and IMC in count one of the complaint are due to be dismissed.

## B. Count Two

Turning to count two, the Government alleges that the Defendants made, used, and caused to be made or used, false records or statements, namely the false certifications and representations made and caused to be made by DPG, IMC-Diagnostic and IMC-Northside on the CMS-8551, CMS-855B and CMS-855R forms, in order to get false or fraudulent claims paid and approved by the Government, that the false certifications and representations were material to the Government's payment of the false claims, and that the records and statements were made with actual knowledge of their falsity or with reckless disregard or deliberate ignorance of whether or not they were false. Section 3729(a)(1)(B) of the False Claims Act subjects to civil liability "any person who. . .knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). This section "does not demand proof that the defendant presented or caused to

be presented a false claim to the government or that the defendant's false record or statement itself was ever submitted to the Government." Hopper, 588 F. 3d at 1327. On May 20, 2009, the FCA was amended by the Fraud Enforcement and Recovery Act ("FERA"). United States ex rel. Willis v. Angels of Hope Hospice, Inc., 2014 U.S. Dist. LEXIS 20959 (M.D. Ga. Feb. 20, 2014). The amendment deleted the "to get" and "paid or approved by the government" requirements and added the materiality requirement. Id., 2014 U.S. Dist. LEXIS 20959 at *34 n.11, 2014 WL 684657 at *11 n.11. The Court in Willis noted that "the addition of the materiality requirement does not appear to have any impact on this Section because the Supreme Court held under the pre-FERA version that 'a plaintiff asserting a § 3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim.'" Id. (quoting Allison Engine Co. v. U.S. ex rel. Sanders, 553 U.S. 662, 665, 128 S. Ct. 2123, 170 L. Ed. 2d 1030 (2008)).

In this action, the Government asserts that Defendants knew that compliance with the Stark law and Anti-Kickback Statute was a condition for payment by Medicare, that IMC-Diagnostic and IMC-Northside certified that they would comply with all Medicare laws and regulations, including the Stark Law and Anti-Kickback Statute on **Form CMS-88**, that Infirmary Health knew that the

compensation arrangements with DPG physicians must satisfy a Stark Law exception, and not violate the Anti-Kickback Statute, that Defendants knowingly made the false certifications for the purpose of getting false or fraudulent claims paid, and that the false certifications were material to the United States' payment of the false claims. The undersigned finds that with respect to IMC-Diagnostic and IMC-Northside, the Government has sufficiently pled with sufficient particularity the false certifications that were made by IMC-Diagnostic and IMC-Northside for the purpose of getting false claims approved by the Government, and have submitted detailed information regarding the Medicare payments that were improperly paid as a result of the improper referral and compensation arrangement with DPG and the false certifications made by IMC-Diagnostic and IMC-Northside. These allegations, if proven, will establish that IMC-Diagnostic and IMC-Northside violated section 3729(a)(1)(B) of the FCA.

With respect to Infirmary Health and IMC, the undersigned finds that here again, the United States has not plausibly alleged some degree of participation by Infirmary Health and IMC in the submission of false certifications by IMC-Diagnostic and IMC-Northside. As noted supra, aside from alleging that the Infirmary Defendants have overlapping officers, executives and employees, the Government has not proffered facts sufficient to

make a particularized showing that Infirmary Health and IMC participated in the submission of the false certifications by IMC-Diagnostic and IMC-Northside. Additionally, the Government has not put forth facts suggesting that there was such a unity of interest and ownership between the Infirmary Defendants that separate personalities of the entities no longer exist, or that respecting the distinct corporate forms would produce an inequitable result. Thus, the Government's claims against Infirmary Health and IMC in count two of the complaint are due to be dismissed.

**C. Count Three**

In count three of its complaint, the Government alleges that Defendants made and used or caused to be made or used false records or statements material to an obligation to pay or transmit money to the United States or knowingly concealed, avoided or decreased an obligation to pay or transmit money to the United States. (Doc. 30 at 34). The false claims act imposes liability on "any person who. . .knowingly makes, uses or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). "This is known as the 'reverse false claim'

provision of the FCA because liability results from avoiding the payment of money due to the government, as opposed to submitting to the government a false claim." Matheny, 671 F. 3d at 1222; Willis, 2014 U.S. Dist. LEXIS 20959 at *37.  This provision was added to the False Claims Act in 1986 "to provide that an individual who makes a material misrepresentation to avoid paying money owed to the Government would be equally liable under the Act as if he had submitted a false claim to receive money."  United States ex rel. Cullins v. Astra, Inc., 2010 U.S. Dist. LEXIS 13469 at *15-16, 2010 WL 625279, *5 (S.D. Fla. Feb. 17, 2010) (quoting S. Rep. No. 99-345, at 18; 1986 U.S.C.C.A.N. at 5283).

In this type claim, "'the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated.'"  Hoyte v. American Nat'l Red Cross, 518 F.3d 61, 63 n.1 (D.C. Cir. 2008)(quoting United States ex rel. Bain v. Georgia Gulf Corp., 386 F. 3d 648, 553 (5th Cir. 2004); see also United States ex rel. Thomas v. Siemens AG, 708 F. Supp. 2d 505, 514 (E.D. Pa. 2010) (the purpose of the provision was not to provide a redundant basis to state a false statement claim under subsection (a)).  To establish a reverse false claim, the plaintiff must prove "1) a false record or statement; (2) the defendant's knowledge of the falsity; (3) that the

defendant made, used or causes to be made or used a false statement or record; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) the materiality of the misrepresentation." Matheny, 671 F.3d at 1222.

The undersigned finds that the Government has failed to sufficiently plead a reverse false claim. As pled, the Government asserts, in a conclusory fashion, that Defendants made and used or caused to be made or used false records or statements material to an obligation to pay or transmit money to the United States or knowingly concealed, avoided or decreased an obligation to pay or transmit money to the United States. As best the undersigned can discern, the Government is contending that Defendants fraudulently billed the Government for designated health services that were improperly referred by the DPG physicians, and that the regulations implementing the Stark Law requires that "[a]n entity that collects payment for a designated health service that was performed pursuant to a prohibited referral must refund all collected amounts on a timely basis. . ." 42 C.F.R. § 411.353(d)." (Doc. 30 at 7).

As a preliminary matter, the Government has not identified the specific false statement or record that was made to knowingly conceal or decrease an obligation to pay or transmit money to the Government. Moreover, the Government's complaint

does not contain any factual assertions that Defendants submitted false statements in order to conceal or avoid an obligation to the Government. To the contrary, the Government contends that Defendants engaged in the improper referral scheme in order to get the Government to pay over money to which the Defendants were not entitled, and to induce DPG physicians to make referrals to IMC-Diagnostic, IMC-Northside and related Infirmary Health subsidiaries, and to prevent DPG physicians from affiliating with competitors. Because the Government has simply alleged, without any specific factual support, that Defendants violated this section of the Act, it has failed to meet Rule 9(b)'s pleading requirements and has failed to put Defendants on notice as to the substance of this claim. Accordingly, Defendants' motion to dismiss this claim is due to be granted.

### D. Counts Four and Five

Defendants also seek the dismissal of the count four (mistaken payment) and count five (unjust enrichment) of the Government's complaint. As noted supra, Defendants argue that the Government failed to specify whether the claims are state common law claims or federal common law claims. Additionally, Defendants argue that the claims should be dismissed due to the fact that they derive from the alleged violations set forth in counts one through three, and because the Government has not

sufficiently alleged those claims, counts four and five should be dismissed along with the first three counts. Defendants also assert that count five should be dismissed because it does not differentiate among the defendants, but instead lumps them all together.

The Government's rights arising under a nationwide federal program such as Medicare are governed by federal law, not state law. United States ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr., 2012 U.S. Dist. LEXIS 36304, *17, 2012 WL 921147, *6 (M.D. Fla. March 19, 2012). A claim for payment by mistake of fact allows the Government to "'recover funds which its agents have wrongfully, erroneously, or illegally paid.'" United States v. Fadul, 2013 U.S. Dist. LEXIS 27909, *39 (quoting United States v. Medica-Rents Co., 285 F. Supp. 2d 742, 776 (N.D. Tex. 2003)). The claim is "available to the United States and is independent of statute." United States v. Mead, 426 F.2d 118, 124 (9th Cir. 1970)); see also United States v. Lahey Clinic Hosp., Inc., 399 F.3d 1, 16 n.16 (1st Cir. 2005) (explaining that the Government's "power to collect money wrongfully paid" is part of the United States' "inherent authority") (internal quotation marks omitted). Claims for unjust enrichment and payment under mistake of fact are essentially duplicative of each other.[2] See

---

[2] In a False Claim Act case, the government may generally plead theories in the alternative, even if different claims seek

Ellipso, Inc. v. Mann, 460 F. Supp. 2d 99, 104-05 (D.D.C. 2006) (setting forth elements of unjust enrichment); United States v. Bouchey, 860 F. Supp. 890, 894 (D.D.C. 1994) (same); Mead, 426 F.2d at 124 (setting forth elements of payment under mistake of fact); LTV Educ. Sys., Inc. v. Bell, 862 F.2d 1168, 1175 (5th Cir. 1989) (same).

Where it seeks to recover payments made as a result of false claims, the Government must show that it "made . . . payments under an erroneous belief which was material to the decision to pay." Mead, 426 F.2d at 124. "[K]nowledge of falsity is not a requisite for recovery under the mistake doctrine." Id., 426 F.2d at 125 n. 6. Accordingly, even where the Government cannot establish that a defendant acted knowingly for purposes of the False Claims Act, the Government may be entitled to recovery under the alternative theory of payment by mistake of fact. See, e.g., id. at 121, 124 (although the Government failed to establish that the defendant acted knowingly in submitting false claims that "overstated his actual charges," it was still entitled to reimbursement of the overcharges pursuant to its claim for payment by mistake of

---

relief for the same injury, so long as there is ultimately only one recovery. See United States v. United Technologies Corp., 255 F. Supp. 2d 779, 785 (S.D. Ohio 2003) (common law and FCA claims may proceed together because, while the Government "will not be allowed to recover twice, [it] may defer its election of remedy until trial on the merits").

fact); cf. United States v. Khan, 2009 U.S. Dist. LEXIS 68546, *15 n.4, 2009 WL 2461031, *5 n.4 (E.D. Mich. 2009) (entering summary judgment on the Government's payment by mistake claim as an alternative holding in the event that amounts awarded under the False Claims Act were subsequently found to be "legally unsustainable"); United States v. Bellecci, 2008 U.S. Dist. LEXIS 23892, 2008 WL 802367, at *4-5 n.10 (E.D. Cal. 2008) (observing that the Government could be entitled to summary judgment on its claim for payment by mistake of fact even where it had implicitly "retract[ed]" its allegations that the defendant was intentionally deceptive in submitting claims to the Government).

In this action, the Government has alleged that it paid IMC-Diagnostic and IMC-Northside for claims for designated health services rendered by DPG physicians who were in a financial relationship prohibited by the Stark Law and/or the Anti-Kickback statute without knowledge of material facts, and under the mistaken belief that IMC-Diagnostic and IMC-Northside were entitled to receive payments when in fact they were not. The Government also contends that its mistaken belief was material to the decision to pay IMC-Diagnostic and IMC-Northside for such claims, and that IMC-Diagnostic, IMC-Northside, DPG and Infirmary Health are liable for restitution to the United States for the amounts paid in error. The Government further contends

that the Defendants have been unjustly enriched by directly or indirectly obtaining government funds to which they are not entitled. In support of its claims, the Government has provided specific information detailing the DPG physicians who allegedly provided allegedly prohibited referrals to IMC-Diagnostic and IMC-Northside, as well as examples of specific false claims that IMC-Diagnostic and IMC-Northisde submitted to Medicare, received payment for, and in turn paid DPG for its referral of a designated health service. The examples contain information regarding the alleged provider, the referring physician, the claim date of service, the place of service and the amount paid by the Government on each listed claim. (Docs. 30-1, 30-2). The undersigned finds that these facts, as alleged by the Government, are sufficient to state a plausible claim for payment by mistake and unjust enrichment against IMC-Diagnostic and IMC-Northside. As noted supra, while the Government asserts that the Infirmary Defendants are interrelated and share many of the same officers, executives and employees, the Government has not proffered facts sufficient to make a particularized showing that Infirmary Health and IMC participated in the submission of the false statements or records upon which the Government relied to issue the payments at issue, or that either Infirmary System or IMC was directly or indirectly enriched by said payments. Accordingly, the Government has not stated a plausible claim for

payment by mistake and unjust enrichment against Infirmary Health or IMC.

### IV.  Conclusion

For the reasons set forth above, the undersigned recommends that Defendants' Motion to Dismiss be granted in part, and denied in part, as follows:

1). The motion should be **granted** with respect to all claims against Defendants IMC and Infirmary Health (as contained in counts 1-5);

2). The motion should be **granted** with respect to count three against Defendants IMC-Diagnostic and IMC-Northside; and

3). The motion should be **denied** with respect to all of the remaining claims against IMC-Diagnostic and IMC-Northside (as contained in counts 1, 2, 4, and 5).


### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L. R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for

the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **11th** day of **April, 2014.**

/s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**