IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,            )
Ex rel. Christian M. Heesch,         )
                                     )
        Plaintiff,                   )
                                     )
vs.                                  )      CIVIL ACTION NO. 11-000364-KD-B
                                     )
DIAGNOSTIC PHYSICIANS GROUP,         )
P.C., *et al.*,                      )
                                     )
        Defendants.                  )

## REPORT AND RECOMMENDATION

This action is before the Court on Defendant Diagnostic Physicians Group, P.C.'s Motion to Dismiss (Doc. 57). The motion has been fully briefed and has been referred to the undersigned Magistrate Judge for entry of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After careful consideration, the undersigned recommends that the motion be granted in part, and denied in part.

### I.    Background

This action was originally filed by relator, Christian M. Heesch, against the above Defendants IMC-Diagnostic, IMC-Northside Clinic, P.C., Infirmary Medical Clinics, P.C., Infirmary Health System, Inc.'s, and Diagnostic Physicians Group, P.C. based on alleged violations of the False Claims Act ("FCA"). After investigation, the Government announced on June 28, 2013, that it had elected to intervene as to certain claims

made by the relator against Defendants. (Doc. 28). On August 7, 2013, the Government filed its Complaint in Intervention. (Doc. 30). In its Complaint, the Government alleges that Defendant Infirmary Health System ("Infirmary Systems") is the largest non-governmental health care system in Alabama, and that in the late 1980s, it created Infirmary Medical Clinic, P.C. ("IMC") in order to acquire physician practices and to establish new clinic subsidiaries, including IMC-Diagnostic and Medical Clinic, P.C. ("IMC-Diagnostic") and IMC-Northside Clinic, P.C. ("IMC-Northside"). (Id., at 3-4).

According to the Government, IMC oversees IMC-Diagnostic and IMC-Northside, and with the approval of Infirmary Systems and its Board of Directors, entered into contractual agreements or physician service agreements with individual physicians and physician groups to provide physicians (as independent contractors) to IMC-Northside and IMC-Diagnostic. (Id.). The Government contends that DPG, a private corporation owned and operated by physicians, is one such physician group with whom IMC contracted. (Id.).

The Government further alleges that DPG and IMC-Diagnostic were parties to a Physician Services Agreement which was signed in 1997, and provided that DPG and its physicians would be responsible for all physician services at IMC-Diagnostic, that IMC-Diagnostic would be responsible for all overhead, including

2

office space and non-physician personnel, equipment and billing services, that DPG would be paid a sum equal to a percent of collections received as compensation for services rendered by DPG and its physicians, and that the parties would comply with all applicable laws and regulations, including the Ethics in Patient Referrals Act, as amended (the "Starks Act"). (Id., at 17-27). The Government contends that all DPG physicians executed form CMS 855I, whereupon each certified his/her understanding that payment of a Medicare claim is conditioned on compliance with applicable laws, including the federal Anti-Kickback statute and Stark law, and form CMS 855R, whereupon each physician reassigned his/her right to payment from Medicare to IMC-Diagnostic and IMC-Northside. (Id., at 13-14, 24).

The Government also contends that notwithstanding the parties' agreement that the federal Anti-kickback statute and Stark law would be observed, between July 2005 through December 2011, Defendants developed a scheme whereby DPG physicians referred patients being treated at IMC-Diagnostic for designated health services and testing that was often performed by IMC-Diagnostic personnel on equipment owned by IMC-Diagnostic, that DPG physicians assigned their right to IMC-Diagnostic the right to seek reimbursement for said services, that IMC-Diagnostic billed Medicare for the referenced services and testing, and tracked the (designated health services) referrals made by each

DPG physician, that IMC-Diagnostic in turn paid DPS for the referrals, and that DPG then compensated the individual physicians for their referral of designated health services, some of which the DPG physicians did not personally perform, in violation of the Stark law. (Id., at 15-21).

The Government also contends that beginning on April 1, 2008, IMC-Northside entered into a similar agreement with DPG, and this arrangement likewise resulted in individual DPG physicians rendering service (as independent contractors) at IMC-Northside and receiving payment for the referral of designated health services, some of which they did not personally perform in violation of the Stark Law. (Id., at 21-22).

The Government maintains that Defendants made these payments knowingly and in violation of the False Claim Act ("FCA"), that records from meeting in which representatives for all of the Defendants were in attendance show that during the relevant time period, Barre Sanders held positions with Infirmary Health, some of its subsidiaries and DPG, that Sanders was responsible for overseeing DPG's finances and accounting, and that he and other representatives of the Defendants knew and discussed that IMC-Northside and IMC-Diagnostic payments to DPG for the prohibited referrals were being funneled back to the referring DPS physicians and were not based on a "predetermined

formula", but was instead tied to the volume of referrals made by each DPG physicians. (Id., at 4, 5, 23-25, 27-29, 31-31).

Finally, the Government maintains that the purpose of this unlawful scheme was to keep DPG and its physicians affiliated with Infirmary Health, to prevent them from affiliating with competitors, and to induce DPG physicians to refer federal healthcare business to IHS subsidiaries, IMC-Diagnostic and IMC-Northside, and Mobile Infirmary Medical Center ("Mobile Infirmary") in violation of the Anti-Kickback Statute and the FCA. (Id.).

As noted *supra*, the Government filed a complaint in intervention. In count one of the complaint, the Government alleges violations of 31 U.S.C. § 3729 (a)(1) and (a)(1)(A) of the FCA. Specifically, the Government contends that Defendants knowingly presented or caused to be presented, false and fraudulent claims for payment or approval to the United States, including claims for reimbursement for designated health services that violated the Stark Law, as well as false and fraudulent claims for reimbursement by Medicare, for services provided in violation of the Anti-Kickback Statute. (Id., at 33). In count two of the complaint, the Government alleges violations of 31 U.S.C. § 3729 (a)(1)(B). Specifically, the Government contends that DPG, IMC-Diagnostic, and IMC-Northside knowingly made or caused to be made false certifications and

representations on CMS-8551, CMS-855B, and CMS-88R forms for the purpose of getting false or fraudulent claims paid and approved by the United states, and that said statements were material to the United States' payment of the false claims. (Id., at 33-34).

In count three of the complaint, the Government alleges violations of 31 U.S.C. § 3729(a)(7) and (a)(1)(G) of the False Claims Act. Specifically, the Government alleges that Defendants knowingly made and used or caused to be made false records or statements material to an obligation to pay or transmit money to the United States or knowingly concealed or avoided an obligation to pay or transmit money to the United States. (Id., at 34). In count four of the complaint, the Government alleges that it is entitled to recover monies paid by the United States to IMC-Diagnostic and IMC-Northisde by mistake. According to the Government, it did not have knowledge of material facts, namely that these Defendants were seeking reimbursement for claims by DPG physicians who were in a financial relationship prohibited by the Stark Law and the Anti-Kickback Statute. The Government thus contends that IMC-Diagnostic, IMC-Northside, DPG, and Infirmary Health are liable to make restitution to the United States for the amounts of the payments made in error to them by the United States. (Id., at 35). In count five of the complaint, the Government alleges

that by directly or indirectly obtaining government funds to which they were not entitled, Defendants were unjustly enriched and are liable to account for and pay such amounts or the proceeds therefrom to the United States. (Id.)

Defendant DPG filed the instant motion to dismiss and seeks the dismissal of Plaintiff's claims against it. (Docs. 57, 58, 78). According to DPG, the Government has failed to allege facts with the required particularity in order to state a FCA claim in counts one and two. Specifically, Defendant asserts that the Government has not identified with particularity facts as to the time, place, and substance of the Defendant's alleged fraud, such as when the fraud occurred and who engaged in the fraud, nor has Defendant provided specific information regarding when the claims at issue were submitted to the Government and the dates on which the claims were paid. Additionally, Defendant alleges, with respect to count one, that the Government has not alleged that DPG knowingly presented false claims, and has not set forth particularized facts showing that DPG caused a false claim to be submitted. (Doc. 58 at 2-4). In regards to count three, DPG contends that the Government has failed to meet the standard for pleading a reverse false claim under either the pre or post Fraud Enforcement and Recovery Act of 2009 ("FERA"). Specifically, DPG argues that the Government fails to allege with particularity the obligation that DPG owed

to pay the Government. (Id., at 6).

DPG also asserts that counts four and five are due to be dismissed because the Government failed to specify whether the claims are state common law claims or federal common law claims. (Id., at 7-8). Additionally, Defendant argues that the unjust enrichment and payment by mistake claims should be dismissed because they derive from the alleged violations set forth in counts one through three, and because no facts supporting counts one, two, and three have been sufficiently alleged, counts four and five should be dismissed along with counts one through three. (Id.). DPG also asserts that counts four and five should be dismissed because the Government did not make any payments to DPG and in the absence of direct or indirect mistaken payments to DPS, these common law claims should be dismissed as to DPG.

The Government has responded in opposition to the motion, and argues that in regards to each count, it has plead with sufficient particularity the necessary elements for a cause of action and has stated claims upon which relief can be granted. (Doc. 69).

II.     **Legal Standards**

**A. Motions to Dismiss**

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts the non-moving

party's factual allegations as true. <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). Moreover, the rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), the Supreme Court explained that while a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations in order to withstand attack, the complaint must however contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. <u>Id</u>. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

### B. The Stark Amendment

The Stark Amendment to the Medicare Act, 42 U.S.C. § 1395nn, "was enacted to address overutilization of services by physicians who stood to profit from referring patients to

facilities or entities in which they had a financial interest." United States ex rel. Schubert v. All Children's Health System, 2013 U.S. Dist. LEXIS 163075, 2013 WL 6054803, *4 (M.D. Fla. November 15, 2013 (quoting U.S. ex rel. Drakeford v. Tuomey Healthcare Sys., Inc., 675 F. 3d 394, 397 (4th Cir. 2012). "Generally, the Stark Amendment prohibits a physician who has a 'financial relationship' with an entity-such as a hospital-from making a 'referral' to that hospital for the furnishing of certain 'designated health services' for which payment may be made by the United States under the Medicare program." Id. Under the Stark Amendment, a physician has a "a financial relationship" with an entity if the physician has "an ownership or investment interest in the entity" or "a compensation arrangement" with it. 42 U.S.C. § 1395nn(a)(2). The term "compensation" includes any remuneration, "directly, indirectly, overtly or covertly, in cash or in kind." Drakeford, 675 F. 3d. at 398; 42 U.S.C. § 1395nn(h)(1)(B).

**C. The False Claims Act**

The False Claims Act (FCA) imposes liability on any person who (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval or (2) knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S. C. § 3729(a)(1)(A)-(B). The FCA further imposes liability on "any

person who. . .knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729 (a)(1)(G).

**D. Fed. R. Civ. P. Rule 9(b)**

Claims of fraud brought pursuant to the FCA must comply with the particularized pleading requirements of Fed. R. Civ. P. 9(b). U.S. ex rel. Clausen v. Lab. Corp. of Am., 290 F. 3d. 1301, 1308-09 (11th Cir. 2002). To state a claim under the False Claims Act that complies with Rule 9(b), "the complaint must allege 'facts as to time, place and substance of the defendant's alleged fraud" [and] "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" Corsello v. Lindcare, Inc., 428 F. 3d 1008, 1012 (11th Cir. 2005)(quotation omitted); see also U.S. ex rel. Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F. 3d 562, 567-68 (11th Cir. 1994). Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint.

**III. Analysis**

**A. Count One**

As noted *supra*, DPG contends that the Government has failed to allege facts with the particularity required by Rule 9(b) to

support liability against DPG with respect to the claims raised in counts one, two, and three. Turning first to count one, the Government alleges that Defendants, including DPG, presented or caused to be presented false claims for payment or approval to the United States, including claims for reimbursement of designated health services that violated the Stark Law, as well as false and fraudulent claims for reimbursement by Medicare, for services provided in violation of the Anti-Kickback Statute.[1]

The Courts have made clear with regards to an FCA cause of action, Rule 9(b) requires a plaintiff to not only provide the "who, what, where, when and how of improper practices" but also the "who, what, where, when, and how of fraudulent submissions to the Government." Corsello v. Lincare, Inc., 428 F. 3d 1108, 1014 (11th Cir. 2005) (per curiam) (internal quotation marks omitted); see also Matheny v. Medco Health Solutions, Inc., 671 F.3d 1217, 1222 (11th Cir. 2012) ("[t]he particularity requirement of Rule 9(b) is satisfied if the complaint alleges 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.") (quoting Hopper v. Solvay Pharmaceuticals, Inc., 588

---

[1] The False Claims Act subjects to civil liability "any person who. . .knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

F.3d 1318, 1324 (11th Cir. 2009)).

The undersigned finds that the Government's allegations in counts one and two satisfy Rule 9(b)'s pleading requirements with respect to Defendant DPG. In count one of the complaint, the Government alleges the who - namely IMC-Diagnostic, IMC-Northside, and DPG; the what - false claims for payment or approval to the United States including claims for reimbursement of DPG for designated health services that DPG physicians referred but did not perform in violation of the Stark law and the Anti-Kickback statute; the when - Between July 2005 and December 2011, DPG made improper referrals for designated health services to IMC-Diagnostic, and assigned to IMC-Diagnostic the right to seek reimbursement from Medicare for the improper referrals; and between April 2008 and 2011, DPG made improper referrals for designated health services to IMC-Northside, and assigned to IMC-Northside the right to seek reimbursement from Medicare for the improper referrals; the where - IMC-Diagnostic operates a clinic located on Spring Hill Avenue in Mobile, Alabama, IMC-Northside operates a clinic located in Saraland, Alabama, and DPG provides the physicians for both clinics; and the how - IMC-Diagnostic and IMC-Northside had agreements with DPG whereby DPG physicians provided medical services to IMC-Diagnostic and IMC-Northside and they also had an arrangement through which DPG physicians improperly referred patients to

IMC-Northside and IMC-Diagnostic for various tests and designated health services. According to the Government, DPS assigned to IMC-Northside and IMC-Diagnostic the right to seek reimbursement from Medicare for said tests and designated health services, with the full knowledge of all Defendants that the referrals were improper because IMC-Northside and IMC-Diagnostic were compensating DPG for the physician referrals, and DPG was in turn compensating the individual DPG physicians for said referrals, based on the volume of referrals by each individual DPG physician, in violation of the Stark law and the Anti-Kick backs statute. (Doc. 30 at 17-33).

In its complaint, the Government offers as an example of false claims submitted to Medicare by IMC-Northside and IMC-Diagnostic, a set of nuclear heart imaging tests that were referred on June 23, 2009 by a DPG physician who was assigned to IMC-Northside. According to the Government, the tests were performed at IMC-Diagnostic, but IMC-Northside billed Medicare for the technical component of the tests, while IMC-Diagnostic billed Medicare for the professional component of the same tests. The Government contends that none of the DPG physicians at IMC-Northside were cardiologists, and IMC-Northside did not have the equipment necessary to perform the nuclear cardiology imaging tests. (Id., at 23).

In addition, along with its complaint, the Government attached a listing of over fifty DPG physicians who allegedly participated in the improper financial arrangement through which they received improper compensation for the above-described referrals to IMC-Diagnostic and/or IMC-Northside. (Doc. 30-1, Ex. 1). The listing includes the name of each referring physician and the starting and ending dates of their referrals. Additionally, Exhibit 2, which is also attached to the Government's complaint, includes examples of alleged false claims submitted to Medicare by IMC-Diagnostic between 2005 and 2011. (Doc. 30-2, Ex. 2). The listing includes the provider name, the claim number, the date of the claim, the specific procedure for which reimbursement was sought, a description of the procedure, the place of service, the amount paid for the service, and the name of the referring physician. (Id.)

Based upon the above, the undersigned finds that the Government has plead facts with sufficient particularity against Defendant DPG so as to satisfy the requirements of Rule 9(b) for count one. Specifically, the Government has alleged how, when, and where the Defendants, including DPS, were knowingly involved in an arrangement whereby IMC-Northside (during the 2008 through 2011 time frame) and IMC-Diagnostic (during the 2005 through 2011 time frame) received referrals from DPG physicians for designated health services and in turn submitted claims to the

Government for said services. DPG then accepted payment from IMC-Northside and IMC-Diagnostic for the referrals, and passed along the payments to the individual referring DPG physicians, in violation of the Stark Law and the Anti-Kickback statute. While the Government does not allege that DPG directly presented any claims to Medicare for payment, the facts as alleged by the Government are sufficient to make a plausible claim that DPG, through its physicians, played a significant role in causing the claims to be presented to Medicare as DPG physicians made the improper referrals, and then assigned to IMC-Northside and IMC-Diagnostic the ability to seek reimbursement for the designated health services to Medicare. Further, DPG accepted payment from IMC-Northside and IMC-Diagnostic for the referrals, and then compensated the referring physicians based on the volume of their referrals. Given the alleged integral involvement on the part of DPG in the submission of the claims, the undersigned finds that the Government has alleged particularized facts, which if proven, will establish that DPG caused a false claim to be presented to the Government.

**B. Count Two**

Turning to count two, the Government alleges that the Defendants made, used, and caused to be made or used, false records or statements, namely the false certifications and representations made and caused to be made by DPG, IMC-

Diagnostic and IMC-Northside on the CMS-8551, CMS-855B and CMS-855R forms, in order to get false or fraudulent claims paid and approved by the Government, that the false certifications and representations were material to the Government's payment of the false claims, and that the records and statements were made with actual knowledge of their falsity or with reckless disregard or deliberate ignorance of whether or not they were false. Section 3729(a)(1)(B) of the False Claims Act subjects to civil liability "any person who. . .knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). This section "does not demand proof that the defendant presented or caused to be presented a false claim to the government or that the defendant's false record or statement itself was ever submitted to the Government." Hopper, 588 F. 3d at 1327. On May 20, 2009, the FCA was amended by the Fraud Enforcement and Recovery Act ("FERA"). United States ex rel. Willis v. Angels of Hope Hospice, Inc., 2014 U.S. Dist. LEXIS 20959 (M.D. Ga. Feb. 20, 2014). The amendment deleted the "to get" and "paid or approved by the government" requirements and added the materiality requirement. Id., 2014 U.S. Dist. LEXIS 20959 at *34 n.11, 2014 WL 684657 at *11 n.11. The Court in Willis noted that "the addition of the materiality requirement does not appear to have any impact on this Section because the Supreme Court held under

the pre-FERA version that 'a plaintiff asserting a § 3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim.'"  Id. (quoting Allison Engine Co. v. U.S. ex rel. Sanders, 553 U.S. 662, 665, 128 S. Ct. 2123, 170 L. Ed. 2d 1030 (2008)).

In this action, the Government asserts that Defendants knew that compliance with the Stark law and Anti-Kickback Statute was a condition for payment by Medicare, that IMC-Diagnostic and IMC-Northside certified that they would comply with all Medicare laws and regulations, including the Stark law and Anti-Kickback statute on **Form CMS-88**, that the DPS physicians certified on **Form CMS-855I** that they would comply with all Medicare statutes and regulations, including the Stark law and Anti-Kick statute, and that payment of a Medicare claim is conditioned upon the compliance with the applicable statutes, that the Defendants, including DPG, knew that the referral and compensation arrangements between IMC-Diagnostic, IMC-Northside, and DPG and its physicians must satisfy a Stark law exception, and not violate the Anti-Kickback statute, that Defendants, including DPG, knowingly made the false certifications for the purpose of getting false or fraudulent claims paid, and that the false certifications were material to the United States' payment of the false claims.

The undersigned finds, with respect to DPG, that the Government has pled with sufficient particularity the false certifications that were made by DPG's physicians, and that the certifications were for the purpose of aiding IMC-Northside and IMC-Diagnostic in getting false claims approved by the Government. Additionally, the Government has submitted detailed information regarding the Medicare payments that were paid as a result of the improper referral and compensation arrangement with DPG and the false certifications made by DPG physicians, IMC-Diagnostic, and IMC-Northside. These allegations, if proven, will establish that DPG violated section 3729(a)(1)(B) of the FCA.

### C. Count Three

In count three of its complaint, the Government alleges that Defendants made and used or caused to be made or used false records or statements material to an obligation to pay or transmit money to the United States or knowingly concealed, avoided, or decreased an obligation to pay or transmit money to the United States. (Doc. 30 at 34). The False Claims Act imposes liability on "any person who. . .knowingly makes, uses or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit

money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). "This is known as the 'reverse false claim' provision of the FCA because liability results from avoiding the payment of money due to the government, as opposed to submitting to the government a false claim." Matheny, 671 F. 3d at 1222; Willis, 2014 U.S. Dist. LEXIS 20959 at *37. This provision was added to the False Claims Act in 1986 "to provide that an individual who makes a material misrepresentation to avoid paying money owed to the Government would be equally liable under the Act as if he had submitted a false claim to receive money." United States ex rel. Cullins v. Astra, Inc., 2010 U.S. Dist. LEXIS 13469 at *15-16, 2010 WL 625279, *5 (S.D. Fla. Feb. 17, 2010) (quoting S. Rep. No. 99-345, at 18; 1986 U.S.C.C.A.N. at 5283).

In this type claim, "'the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated.'" Hoyte v. American Nat'l Red Cross, 518 F.3d 61, 63 n.1 (D.C. Cir. 2008)(quoting United States ex rel. Bain v. Georgia Gulf Corp., 386 F. 3d 648, 553 (5th Cir. 2004); see also United States ex rel. Thomas v. Siemens AG, 708 F. Supp. 2d 505, 514 (E.D. Pa. 2010) (the purpose of the provision was not to provide a redundant basis to state a false statement claim under subsection (a)). To establish a reverse false

claim, the plaintiff must prove "1) a false record or statement; (2) the defendant's knowledge of the falsity; (3) that the defendant made, used or causes to be made or used a false statement or record; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) the materiality of the misrepresentation." Matheny, 671 F.3d at 1222.

The undersigned finds that the Government has failed to sufficiently plead a reverse false claim. As pled, the Government asserts, in a conclusory fashion, that Defendants made and used or caused to be made or used false records or statements material to an obligation to pay or transmit money to the United States or knowingly concealed, avoided, or decreased an obligation to pay or transmit money to the United States. As best the undersigned can discern, the Government is contending that Defendants fraudulently billed the Government for designated health services that were improperly referred by the DPG physicians, and that the regulations implementing the Stark Law requires that "[a]n entity that collects payment for a designated health service that was performed pursuant to a prohibited referral must refund all collected amounts on a timely basis. . ." 42 C.F.R. § 411.353(d)." (Doc. 30 at 7).

As a preliminary matter, the Government has not identified the specific false statement or record that was made to

knowingly conceal or decrease an obligation to pay or transmit money to the Government. Moreover, the Government's complaint does not contain any factual assertions that Defendants submitted false statements in order to conceal or avoid an obligation to the Government. To the contrary, the Government contends that Defendants engaged in the improper referral scheme in order to get the Government to pay money to which the Defendants were not entitled, and to induce DPG physicians to make referrals to IMC-Diagnostic, IMC-Northside, and related Infirmary Health subsidiaries, and to prevent DPG physicians from affiliating with competitors. (Doc. 30 at 29). Because the Government has simply alleged, without any specific factual support, that Defendants violated this section of the Act, it has failed to meet Rule 9(b)'s pleading requirements and has failed to put Defendants on notice as to the substance of this claim. Accordingly, DPG's motion to dismiss this claim is due to be granted.

### D. Counts Four and Five

DPG also seek the dismissal of count four (mistaken payment) and count five (unjust enrichment) of the Government's complaint. As noted *supra*, DPG contends that these claims should be dismissed because the Government failed to specify whether the claims are state common law claims or federal common law claims, and due to the fact that there is no allegation that

the Government paid money to DPG.  Additionally, DPG argues that the claims should be dismissed due to the fact that they derive from the alleged violations set forth in counts one through three, and because the Government has not sufficiently alleged those claims, counts four and five should be dismissed along with the first three counts.

The Government's rights arising under a nationwide federal program such as Medicare are governed by federal law, not state law. United States ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr., 2012 U.S. Dist. LEXIS 36304, *17, 2012 WL 921147, *6 (M.D. Fla. March 19, 2012).  A claim for payment by mistake of fact allows the Government to "'recover funds which its agents have wrongfully, erroneously, or illegally paid.'"  United States v. Fadul, 2013 U.S. Dist. LEXIS 27909, *39 (quoting United States v. Medica-Rents Co., 285 F. Supp. 2d 742, 776 (N.D. Tex. 2003)). The claim is "available to the United States and is independent of statute."  United States v. Mead, 426 F.2d 118, 124 (9th Cir. 1970)); see also United States v. Lahey Clinic Hosp., Inc., 399 F.3d 1, 16 n.16 (1st Cir. 2005) (explaining that the Government's "power to collect money wrongfully paid" is part of the United States' "inherent authority") (internal quotation marks omitted).  Claims for unjust enrichment and payment under mistake of fact are essentially duplicative of each other.[2]  See

---

[2] In a False Claim Act case, the government may generally plead

23

Ellipso, Inc. v. Mann, 460 F. Supp. 2d 99, 104-05 (D.D.C. 2006) (setting forth elements of unjust enrichment); United States v. Bouchey, 860 F. Supp. 890, 894 (D.D.C. 1994) (same); Mead, 426 F.2d at 124 (setting forth elements of payment under mistake of fact); LTV Educ. Sys., Inc. v. Bell, 862 F.2d 1168, 1175 (5th Cir. 1989) (same).

Where it seeks to recover payments made as a result of false claims, the Government must show that it "made . . . payments under an erroneous belief which was material to the decision to pay." Mead, 426 F.2d at 124. "[K]nowledge of falsity is not a requisite for recovery under the mistake doctrine." Id., 426 F.2d at 125 n. 6. Accordingly, even where the Government cannot establish that a defendant acted knowingly for purposes of the False Claims Act, the Government may be entitled to recovery under the alternative theory of payment by mistake of fact. See, e.g., id., 426 F. 2d at 121, 124 (although the Government failed to establish that the defendant acted knowingly in submitting false claims that "overstated his actual charges," it was still entitled to reimbursement of the overcharges pursuant to its claim for payment by mistake of

---

theories in the alternative, even if different claims seek relief for the same injury, so long as there is ultimately only one recovery. See United States v. United Technologies Corp., 255 F. Supp. 2d 779, 785 (S.D. Ohio 2003) (common law and FCA claims may proceed together because, while the Government "will not be allowed to recover twice, [it] may defer its election of remedy until trial on the merits").

fact); cf. United States v. Khan, 2009 U.S. Dist. LEXIS 68546, *15 n.4, 2009 WL 2461031, *5 n.4 (E.D. Mich. 2009) (entering summary judgment on the Government's payment by mistake claim as an alternative holding in the event that amounts awarded under the False Claims Act were subsequently found to be "legally unsustainable"); United States v. Bellecci, 2008 U.S. Dist. LEXIS 23892, 2008 WL 802367, at *4-5 n.10 (E.D. Cal. 2008) (observing that the Government could be entitled to summary judgment on its claim for payment by mistake of fact even where it had implicitly "retract[ed]" its allegations that the defendant was intentionally deceptive in submitting claims to the Government).

In this action, the Government has alleged that it paid IMC-Diagnostic and IMC-Northside for claims for designated health services rendered by DPG physicians, that IMC-Diagnostic and IMC-Northside compensated DPG for the referrals, that DPG in turn provided improper compensation to the referring physicians in violation of the Stark law and the Anti-Kickback statute, that the Government was without knowledge of material facts, and acted under the mistaken belief that IMC-Diagnostic and IMC-Northside were entitled to receive payments when in fact they were not. The Government also contends that its mistaken belief was material to the decision to pay IMC-Diagnostic and IMC-Northside for such claims, and that IMC-Diagnostic, IMC-

Northside, DPG, and Infirmary Health are liable for restitution to the United States for the amounts paid in error. The Government further contends that the Defendants have been unjustly enriched by directly or indirectly obtaining government funds to which they are not entitled.

In support of its claims, the Government has provided specific information detailing the DPG physicians who allegedly provided prohibited referrals to IMC-Diagnostic and IMC-Northside, as well as examples of specific false claims that IMC-Diagnostic and IMC-Northisde submitted to Medicare, received payment for, and in turn paid DPG for its referral of a designated health service. The examples contain information regarding the alleged provider, the referring physician, the claim date of service, the place of service, and the amount paid by the Government on each listed claim. (Docs. 30-1, 30-2).

The undersigned finds that these facts, as alleged by the Government, are sufficient to state a plausible claim for payment by mistake and unjust enrichment against DPG. Although DPG contends that it should not be liable for the improper payments because the payments were made directly to IMC-Diagnostic and IMC-Northside as opposed to DPS, the Government has alleged that DPG was closely involved in the fraudulent scheme by helping to facilitate the submission of the false claim, and reaped benefits from the improper scheme.

In _United States v. Mead,_ 426 F.2d 118, 125 (9th Cir. 1970), the Court held that the Government was entitled to recover payments made by mistake from both the direct recipient of the payment as well as individuals who benefitted from the payments. In _Mead,_ the Government sought to recover payments made via the Agricultural Conservation Program, which was designed to assist farmers in carrying out approved conservation practices by "pay[ing] to or for each farmer the lesser of a fixed percentage of the cost price of dirt ditches or dams or a fixed price per unit of work performed. _Id.,_ 426 F.2d at 120. Under the applicable regulations, contractors were to submit invoices with prices "based on [the] actual cost to the farmer" rather than the "true value of the completed project." _Id._ In _Mead,_ the contractor had submitted invoices with prices for the "true value" of the projects rather than the "actual cost to the farmer". _Id.,_ 426 F.2d at 120. The Government asserted that it had paid the contractor, who performed the actual work and submitted the invoices on behalf for the farmers, for the "true value" of the projects under the mistaken assumption that it was sharing the cost of the conversation projects with the farmers rather than paying the entire cost (or substantially the entire cost). The trial court ruled in favor of the contractor and the farmers, but on appeal, the Appeals court held that the Government may recover payments made under an erroneous belief

that was material to the decision to pay, even if the payments were innocently received. Id., 426 F.2d at 124.

The Mead court observed that:

> As the one into whose hands the mistaken payments flowed, Mead [the contractor] is liable to the government for each of the mistaken over-payments. Since Mead was the active force in obtaining the payments and directly received the benefits of the payments, he now must return that portion of the total of the payments which was made by mistake. The other appellees [farmers] are liable for the mistaken payments because they signed the aid applications and because Mead purported to act in their behalf and they received benefits as a result of the transaction. Wisconsin Central Railroad Co. v. United States, 164 U.S. 190, 17 S.Ct. 45, 41 L.Ed. 399 [1896]; United States v. City of Philadelphia, E.D.Penn., 50 F.Supp. 170 [1943]; See RESTATEMENT (SECOND) OF AGENCY Sections 104, 141. As applicants for governmental aid, these appellees may not insulate themselves from personal responsibility for compliance with the requirements and conditions of the regulations pertinent to their applications. Having received the object of their aid applications in the form of completed conservation projects, they are individually liable (and jointly liable with Mead) for that portion of the aid payments on their own projects which was obtained by mistake.

Mead, 426 F.2d at 124-125.

In this action, the facts as alleged by the Government demonstrate that DPG played an integral role in the Government's mistaken payment of the claims for designated health services and that DPG benefited from the mistaken payment of the claims. As noted, the Government contends the DPG physicians had a prohibited financial relationship with IMC-Diagnostic and IMC-Northside, that the DPG physicians made referrals for designated

health services to IMC-Diagnostic and IMC-Northside notwithstanding the prohibited financial relationship, that the DPG physicians assigned to IMC-Diagnostic and IMC-Northside the right to seek reimbursement from Medicare for the designated health services, and that DPG accepted from IMC-Diagnostic and IMC-Northside payment for the referrals, and in turn, compensated the DPG physicians based on the volume of their referrals. Like the farmers in Mead, DPG may not insulate itself from personal responsibility merely because the Medicare payments were not made directly to it. DPG was responsible for complying with the Medicare requirements, including the Stark law and Anti-kickback statute. DPG is alleged to have played a key role in helping to facilitate the unlawful scheme, and to have benefitted from the unlawful scheme by accepting payments from IMC-Northside and IMC-Diagnostic for a percentage of the collections on referral claims that were billed to Medicare. These factual allegation are sufficient to state a claim for unjust enrichment and payment by mistake. Accordingly, DPG's motion to dismiss the payment by mistake and unjust enrichment claims is due to be denied.

### IV.  Conclusion

For the reasons set forth above, the undersigned recommends that DPG's Motion to Dismiss be granted in part, and denied in part, as follows:

1). The motion should be **granted** with respect to count three against DPG; and

3). The motion should be **denied** with respect to all of the remaining claims against DPG (as contained in counts 1, 2, 4, and 5).

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L. R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **15th** day of **April, 2014.**

/s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**
